## Coble *versus* Nonemaker.

78      501
27 SC ²547

1. As a general rule an attaching creditor can acquire no claim to property in the hands of the garnishee other than the debtor could assert against the garnishee.

2. Eves, by Nonemaker as his agent, gave to Coble a chattel mortgage of store goods to secure a debt to Coble not then due, being part of the purchase-money of the goods ; Eves put Nonemaker into possession of the store to carry it on as his agent before the debt became due ; Nonemaker knowing it was still unpaid, bought the store from Eves for a valuable consideration without intent to defraud creditors, and Eves moved to another state. In foreign attachment against Eves, Coble could recover the goods from Nonemaker in whose hands they had been attached.

3. Although Coble had not taken possession of the goods under the mortgage and it was void against innocent purchasers, it was a valid contract between Coble and Eves, and notwithstanding Nonemaker paid a valuable consideration, by his knowledge of Coble's equities he was not an innocent purchaser.

4. A legal principle is never so applied as to protect fraud.

5. The title to the store was held by Eves in trust to the extent of the unpaid purchase-money, and Nonemaker took it subject to the trust.

6. As to Coble, the contract between Eves and Nonemaker worked no change of title to the goods ; it left them as when the mortgage was made.

7. The trust for Coble as to the goods existing in Eves, the transfer to Nonemaker created him trustee for the same use.

8. If an estate in trust be conveyed to a volunteer, he will be bound by the trust, although he had no notice of it.

9. If the grantee of a trust estate for full value have notice of the trust he is bound just as the grantor. So as to purchasers with notice of any equitable encumbrance.

10. The right of Coble by his mortgage to take possession of the goods did not confine him to replevin, although that was the most obvious remedy.

June 5th 1875. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Cumberland county :* Of May Term 1875, No. 100.

On the 4th of August 1871, a foreign atttachment in debt was issued at the suit of J. W. Coble against Yetman Eves, in which J. H. Nonemaker was the garnishee. On the 17th of August 1871 the sheriff attached a drug store, fixtures and stock, in the hands of the garnishee, who on the same day entered into bond in the usual form, with surety, and the attachment was dissolved. On the trial of the action a verdict was rendered against Eves in favor of Coble for $2800. The garnishee waived the issuing of a scire facias and pleaded " *nulla bona.*"

Under the 27th section of the judiciary article of the Constitution of 1873, and the Act of April 22d 1874, Pamph. L. 109, the parties dispensed with a jury, and submitted the case to the decision of the Court of Common Pleas.

The court found the facts to be as follows :—

Coble, the plaintiff, owning a drug store in Mechanicsburg, on

[Coble *v.* Nonemaker.]

the 10th of March 1868, sold it to Yetman Eves, the defendant, for $4000, for which Eves gave Coble four negotiable notes of $1000 each, payable respectively on the 1st days of April, in the years 1868, 1869, 1870 and 1871. Immediately on the purchase, Eves put Nonemaker, the garnishee, into possession of the store as his agent; Nonemaker as such agent carried on the store. The first note was paid shortly after it became due, and the second was sold by Coble about the same time. In May or June 1868, Coble requested Nonemaker to procure Eves to give him security for the remaining two notes. Eves declined to give security, but proposed, through Nonemaker, to give Coble, in exchange for the two negotiable notes, two sealed notes for the same amounts, together with a chattel mortgage of the drug store to secure the notes. Coble agreed to this proposition and Nonemaker wrote the new notes and the mortgage, all dated March 10th 1868, to correspond with the date of the original notes; the mortgage and notes were executed by Eves in presence of Nonemaker, who signed as a witness, and delivered them to Coble in the latter part of July 1868. The mortgage was that Eves, for securing the payment of the two notes, sold to Coble the drug store bought by him from Coble, consisting of drugs, chemicals, all the fixtures, &c., "and everything in and belonging to said store," to hold to Coble, and upon the condition that if Eves should pay to Coble the two notes at $1000 each, the mortgage was to be of none effect, but in case of default of payment, Coble might sell the drug store, fixtures, &c., and out of the proceeds pay the two notes and return the surplus, if any, to Eves, who was to retain the possession until default should be made. Nonemaker continued in possession of the drug store as Eves' agent until December 20th 1868. On that day Nonemaker, knowing of the mortgage, and that the notes intended to be secured by it were unpaid, bought the drug store thus mortgaged, from Eves for $2100, took possession of it and carried it on in his own name until it was attached in this case. Eves had moved to North Carolina in February or March 1871.

The court found: "Although the sale by Eves to Nonemaker was with full notice to the latter of the mortgage, yet as between themselves, it was a fair sale for a valuable consideration, and without any intention to defraud the creditors of Eves."

In stating the conclusions of law the court, Herman, P. J., said: * * * "In this case Nonemaker stood in the position of a purchaser with notice, and as against the mortgaged chattels in his possession, Coble could have enforced his rights. The mortgage must be considered as a conditional sale by Eves to Coble to be void on the payment of the notes at maturity, and in default, Coble had the right to pursue the mortgaged chattels in the hands of Nonemaker, take possession of them and sell them in satisfaction of his debt. But until such default was made, Eves, by the terms

[Coble v. Nonemaker.]

of the mortgage, had the right to retain peaceable possession and free enjoyment of them, and this gave him the right to sell all the property he had in the chattels to whomsoever he pleased. Had he sold the store to a bonâ fide purchaser without notice, and passed to him the possession of it, a complete title would have passed to the purchaser, and Coble's rights under his mortgage would have been at an end. But having sold and delivered it to a purchaser, with notice, Coble's rights were preserved as against the mortgaged property in the hands of such purchaser. * * * Now, is the attachment of the store in the hands of Nonemaker a good attachment, and does it hold anything? We think not. This is a proceeding *in rem*, and the issue is whether the garnishee had goods and effects of Eves in his hands. The ultimate object of a proceeding in foreign attachment is to appropriate the debtor's assets to the payment of his debts. Nonemaker had nothing in his hands belonging to Eves, and hence there was nothing to attach. * * * If Coble claims to recover, because of the conditional sale to him, which became absolute upon default in payment of the two notes by Eves, then he cannot recover in this proceeding against the garnishee, because he can recover only the value of such of the attached property in his hands belonging to Eves, or which had been assigned to him by Eves in fraud of his creditors. To recover goods, or the value of goods, belonging to himself, he must adopt a different form of action."

Judgment was entered for the defendant.

There were a number of exceptions taken to the rulings of the court, during the hearing, on questions of evidence. There were also points submitted, the answers to which, as well as the decisions on the questions of evidence, were assigned for error by the plaintiff, who removed the record to the Supreme Court, by writ of error.

The assignment of error considered in the Supreme Court was the order of the court entering judgment for the defendant.

*J. Hays*, for plaintiff in error.—A purchaser, with notice, is bound in equity just as the person from whom he purchases: Jacques *v.* Weeks, 7 Watts 270 Uhler *v.* Hutchinson, 11 Harris 113; La Neve *v.* La Neve, Ambler 436. A grantee shall not set up his deed to the prejudice of one who had a prior right, of which he had notice: Murphy *v.* Nathans, 10 Wright 508; Sanger *v.* Eastwood, 19 Wendell 514; Gregory *v.* Thomas, 20 Id. 17; Bennett *v.* Earl, 21 Id. 117; Lewis *v.* Palmer, 28 N. Y. 271; Spraight *v.* Hawley, 39 Id. 441. A sale of chattels, although without delivery of possession, is binding between the parties: Boyle *v.* Rankin, 10 Harris 168. Coble could have recovered in replevin. Dennis *v.* Alexander, 3 Barr 50; Vandyke *v.* Christ, 7 W. & S. 373. But because he had that remedy *in rem* he was not excluded

from proceedings *in personam :* Insurance Co. *v.* Whitney, 20 P. F. Smith 252 ; Scott *v.* Fields, 7 Watts 360 ; Railroad Co. *v.* Pennock, 1 P. F. Smith 250. In foreign attachment evidence is admissible to show that a prior assignment of the matter attached was fraudulent against the creditors : Moser *v.* Mayberry, 7 Watts 12 ; Sinnickson *v.* Painter, 8 Casey 384 ; Childs *v.* Digby, 12 Harris 23 ; Cowden *v.* Pleasants, 9 Barr 59 ; Cowden *v.* W. Branch Bank, 7 W. & S. 432 ; Stewart *v.* McMinn, 5 Id. 100.

*S. Hepburn, Jr.,* and *S. Hepburn* (with whom was *L. A. Gunster*), for defendant in error.—Under a chattel mortgage their must be possession : Keller *v.* Nutz, 5 S. & R. 252 ; Fry *v.* Miller, 9 Wright 443 ; Bowen *v.* Burk, 1 Harris 149 ; Welsh *v.* Bell, 8 Casey 13. The chattel mortgage transferred the title to the mortgagee on default in the mortgagor : Budick *v.* McVanner, 2 Denio 170.

Mr. Justice WOODWARD delivered the opinion of the court, October 1875.

Undoubtedly, the most obvious remedy of the plaintiff would have been an action of replevin, in which the question of the right of the defendant to hold the stock of the drug store under his purchase from Eves could have been directly tried. The general rule is settled that an attaching creditor can acquire no claim to property in the hands of a garnishee, other than such as the debtor in a suit against the garnishee could himself assert. The judgment in the court below was entered in pursuance of this general rule. The fact was found by the record that the sale by Eves to Nonemaker was made for a valuable consideration, without any intention to defraud creditors, and Nonemaker was in possession of the goods in controversy when the attachment was issued against him as garnishee of Eves. Of course, as between the parties to the contract of the 20th of December 1868 the transaction was a final one, and all right of Eves in the property was gone. The inquiry presented here is, whether, by a proper application of the legal rule, the effect of the contract was to extinguish the rights of the plaintiff as well as those of Eves. This is the only subject of discussion, for the exceptions of the defendant on the trial, and urged on the argument, are supported by nothing that appears upon the record.

When Nonemaker bought this stock, he had full knowledge of the mortgage upon it, and of the two accompanying notes, which had been executed in May or June 1868. Indeed, he had drawn up the papers himself. The mortgage was a valid contract, as between the parties to it, although, possession under it not having been taken, it was waste paper as against execution creditors and innocent purchasers. But Nonemaker was not an innocent pur-

[Coble *v*. Nonemaker.]

chaser. It is true he had paid a valuable consideration, but he had the amplest notice of the plaintiff's equities. The whole transaction was one with which he had been connected from the outset. The drug store had originally belonged to the plaintiff, and had been purchased by Eves for Nonemaker's benefit. When he bought, therefore, he knew he was paying for property for which his vendor had never paid, and that the former owner was to be left for the recovery of his purchase-money to the hazards of litigation against an absent debtor resident in North Carolina. If the title had remained in Eves until the 1st of April 1871, the property would have been subject to the operation of the plaintiff's mortgage. Possession could have been taken by him at his discretion, the property sold, and the proceeds applied to the payment of the notes. And this Nonemaker perfectly knew. The original purchase-money had been $4000. Of this sum $2000 had been paid, and the consideration paid to Eves, when the stock was bought, in December 1868, was $2100. This, including interest, was something like the amount the plaintiff had received, and yet it is claimed, on the part of the defence, that the payment of this vested the title to the goods so absolutely in Nonemaker as to destroy every right of the plaintiff to proceed against them as the property of Eves.

A principle of law is never so applied as to promote or protect a fraud. In the mortgage contract there was nothing illegal, immoral or unfair. As against Eves, all its stipulations could have been enforced. Obtaining a personal judgment on the notes, the plaintiff could have levied on the property. And Eves could, by no voluntary act of his own, relieve it from the lien that rested on it, or evade his personal responsibility for the mortgage-debt. Did the joint act of Eves and Nonemaker shift the lien or destroy the responsibility ? The title was taken by Nonemaker with accurate knowledge of the liabilities to which the goods were subject. That title had been held in trust, to the extent of the unpaid purchase-money, for the plaintiff's use. When he accepted it, therefore, he took with it the burden the parties had imposed upon it. As to the plaintiff, it was not in the power of Eves to divest himself of such ownership as was requisite to meet the exigencies of the mortgage-contract, and no purchaser could acquire such divested ownership who had not bought in utter ignorance of the mortgage-lien. It follows that the property stood, when this suit was brought, subject to all the equities which bound it before the contract of December 1868 was made. It cannot be questioned that the plaintiff could have maintained this foreign attachment if the effort to transfer the title had not been attempted. He could have waived the right to seize and sell the goods which the mortgage conferred. He could have levied on them under a judgment. It would be a travesty of legal principles to hold two men competent,

[Coble v. Nonemaker.]

by a juggling use of legal forms, to wipe out a third man's legal rights. In this court these principles have never been so applied. It was held in Moser v. Mayberry, 7 Watts 12, that on the trial of an issue on a scire facias against a garnishee in a foreign attachment, the defendant could not avail himself of the fact that the goods attached came into his hands by means of a fraudulent arrangement between himself and the debtor. And Sinnickson v. Painter, 8 Casey 384, decided that where a legacy or distributive share is attached in the hands of executors or administrators, evidence is admissible to show that a prior assignment of the legacy or distributive share was fraudulent as against creditors. So far as the plaintiff here was concerned, the contract between the defendant and Eves worked no transmutation of the title to the goods. It left them as they stood when the mortgage was executed—the property of Eves, in the defendant's hands, subject to the operation of the plaintiff's lien.

Considered in another aspect, the case seems equally plain. While the title remained in Eves, he held it bound by the trust for the benefit of the plaintiff which the mortgage had created. When the title was passed to the defendant, he, having notice of the plaintiff's equities, became by operation of law, invested with the character of trustee with precisely the same obligations that the contract expressly imposed on Eves. A trust already in existence, and annexed to the present subject-matter, is created *de novo* as against a person who takes by a title derivative from the original trustee: Lewin on Trusts 205. If an estate be passed by trustee to a stranger by conveyance, then the grantee, if he be a volunteer, will be bound by the trust, whether he had notice of it or not; for though he had no actual notice of the equity, yet the court will presume it against him where he paid no consideration: Id. 206; Mansell v. Mansell, 2 P. Wms. 678, 681. But if the grantee be a purchaser of the estate at its full value, then if he take with notice of the trust, he is bound to the same extent and in the same manner as the person of whom he purchased: Dunbar v. Tredennick, 2 B. & B. 319, for knowing another's right to the property, he throws away his money voluntarily and of his own free will: Mead v. Lord Orrery, 3 Atk. 328, (236). And the rule applies not only to the case of a trust properly so called, but to purchasers with notice of any equitable encumbrance, as of a covenant or agreement affecting the estate (Daniels v. Davison, 16 Vesey 249), or a lien for purchase-money: Mackreth v. Symmons, 15 Vesey 329. The defendant then held these goods subject to the equities of the plaintiff under the mortgage. The process of foreign attachment was one which could legitimately be employed for the enforcement of those equities. Even if the property had been in the plaintiff's possession, this remedy could have been applied. A person may attach goods in his own hands belonging to a defendant, or money

[Coble *v.* Nonemaker.]

which he himself owes to a defendant. Sergeant on Attachment, 2 ed. 81, citing 1 Com. Dig. 581; 1 Roll.'s Abr. 554; Graighle *v.* Notnagel, 1 Pet. 245; and Grayson *v.* Veech, 12 Martin 688. Certainly the fact that the stipulations in the mortgage gave the plaintiff the right to take possession of the property and sell it could not have the effect to confine him to an action of replevin, and debar him from another remedy equally appropriate and equally efficient.

Judgment reversed and *procedendo* awarded.