## LA VARRE v. INTERNATIONAL PAPER CO. et al.

District Court, E. D. South Carolina. December 4, 1929.

Melton & Belser, of Columbia, S. C., and Perrin & Tinsley, of Spartanburg, S. C., for plaintiff.

Nelson & Mullins, of Columbia, S. C., for defendants.

GLENN, District Judge. This matter came before me on motion of the defendants to set aside the service of the summons and complaint and to dissolve the attachment obtained by the plaintiff over certain properties and property rights alleged to belong to the two defendants, one or both of them. The matter was heard by me in open court on October 23d and October 25th in Columbia, S. C. Affidavits and records were submitted and exhibits were introduced as the investigation covered a wide field. On Tuesday, November 5th, this court announced its decision in open court at Columbia, S. C., the court then being in session, and this opinion contains the views of the court as expressed at that time.

This action was originally commenced in the court of common pleas for Richland county, and in due time was removed by the defendants to the federal District Court of South Carolina within proper time, and after due notice the defendants made this motion to dismiss the action, set aside the service of the summons and complaint, and to dissolve the attachments theretofore obtained.

On the call of the motion for hearing, the plaintiff filed with the court certain objections to proceeding to hear the motion. These objections are stated by counsel for the plaintiff and presented under five separate heads. These five heads are summarized, and the original papers are filed with this opinion, and are necessary to a complete understanding of the case. They, therefore, should be printed as part of the record in order to clearly present the questions before the courts and its ruling thereon. They may be summarized as follows:

1. Objection to jurisdiction and procedure.

2. Petition and motion to reject defendant's affidavits.

3. Notice of exception to the court's consideration of the affidavit of D. H. Hanley.

4. Notice of a motion to require the framing of appropriate issues for trial by the court as to the relation between the defendant companies and the Columbia Railway & Navigation Company and the Santee-Cooper River Canal Power Development.

5. Notice of a motion to dismiss the plaintiff's motion upon the ground that the said plaintiff's motion to dismiss and the grounds thereof are not sufficiently definite and specific.

Let it be understood at the outset that in a matter of this kind (i. e., where service has been effected and an attachment obtained in a state court before the removal of the action to the federal court), this court, in passing upon a motion to dismiss and dissolve, follows the state law as far as possible. This has been decided as the correct rule in many cases.

This is a removed case, and we look to the local law. Under the South Carolina law regulating attachment, there is no doubt at all about the right of a nonresident defendant to move for the dissolution of the attachment on the ground that it does not own the property attached. See: Greenwood Grocery Co. v. Canadian County Mill & Elevator Co., 72 S. C. 450, 52 S. E. 191, 192, 2 L. R. A. (N. S.) 79, 110 Am. St. Rep. 627, 5 Ann. Cas. 261. In that case Mr. Justice Woods, who was later a member of the Circuit Court of Appeals for the Fourth Circuit says: "The general rule is that an attachment will not be dissolved, on the ground that the defendant has no title to the property, or that it is the property of the plaintiff. The defendant's lack of interest in the property would affect the title of the purchaser under the attachment, but not the validity of the process. * * * But it is manifest this reasoning does not apply where the court obtains jurisdiction of a nonresident by virtue of the attachment of his or its property in the state. In such case, the jurisdiction and the validity of the attachment depend upon the defendant having property in the state, and if this fact does not appear, it is fatal."

It is readily seen that the other objections of the plaintiff go to the manner of conducting the hearing. This is largely a matter of discretion, it being impossible to ascertain at the outset as to whether or not such serious questions of fact would arise

which would cause the court to feel that any affiants should be present for cross-examination. As the evidence was introduced it soon became evident that there was practically no contest as to the questions of fact involved, and that the issues presented were ones of law. The plaintiff was not in any way taken by surprise on any evidentiary showing. Counsel for the defendants raised no objection to introduction of any records which the plaintiff sought to introduce. It was impossible to see how the plaintiff could have made any stronger showing, as to the affiliation of the various allied corporations with each other, than was made. To have required the presence of the affiants for cross-examination would have been, in the opinion of this court, an abuse of its discretion and would have served no useful purpose. The proceedings of the Federal Trade Commission, where these same affiants were examined very fully about the very matters on which they would have been examined here, were admitted in evidence. These records abundantly sustained the very same questions of fact which the plaintiff was seeking to establish on the hearing of this motion.

A study of the record and exhibits therefore leads the court to the conclusion that there was no necessity for adjourning the hearing and requiring the presence of the nonresident witnesses for cross-examination. Nor was there in the opinion of this court any serious doubt as to any question of fact which would require a submission of an issue to a jury. It is urged that the plaintiff could have introduced other records and produced additional evidence bearing upon the agency of one Hanley and of the South Carolina Timber Company and Columbia Railway & Navigation Company for the two defendants (named here). This court points out that this motion was noticed on September 26th and was not heard until October 23d. Counsel had ample time to prepare his showing, and from this court's knowledge of counsel's ability and vigilance it is safe to say that all possible investigations were made. Here again it is pointed out that the records of the investigations, as conducted by the Federal Trade Commission at Washington (which records are in evidence), developed the relations existing between the defendants here and the two South Carolina corporations as fully as they could have been developed in this court. As to the agency of Hanley, counsel had nearly one month to investigate this and prepare to offer any proof which might have been obtainable along this line.

And as to all of these matters, the court takes into consideration the sworn allegations of the complaint that the plaintiff had formerly had extensive negotiations and dealings with these defendants and was not ignorant of their affairs. Even further, we point out that there was introduced in evidence the record of a suit in the federal District Court for the Middle District of Georgia, wherein the relations between these parties had been investigated was received in evidence. (This record, as introduced in evidence, covered the proceedings in that suit, Harold Hall, plaintiff, v. William La Varre, defendant [no opinion handed down], in equity, removed from superior court of Richmond county, Ga., up to and including the order of Judge Deaver signed on September 30, 1929.)

Therefore, all of the objections of the plaintiff, both as to hearing the motion and as to the manner of hearing, are overruled.

This brings us to consider the motion on its merits.

The plaintiff submits that his claim to jurisdiction over the two defendants should be sustained on five grounds, any one, or all of them. We are arranging these claims in the logical order of consideration.

1. Service on officers and agents of subsidiary corporations as agents of defendants.

2. Defendants' interest in Santee-Cooper Development and Columbia Railway & Navigation Company attached.

3. Debts due by newspaper corporations for newsprint attached.

4. Defendants' claim to debt due by La Varre and Hall attached.

5. Defendants' claim to interest in stock attached.

The Plaintiff's First Claim to Jurisdiction.

Upon considering the evidence and the authorities cited, this question is easily determined.

[5] The only reasonable inference from the evidence is that at the time of the attempted service of process upon D. H. Hanley he was not an agent of either of the defendants. This being true, it is elementary that the attempted service was ineffectual and invalid, and should be set aside.

If it be assumed that the South Carolina Timber Company is a wholly controlled subsidiary of International Paper Company or International Paper & Power Company, it does not follow that the service of process upon D. H. Hanley, an officer of the subsidiary, bestowed upon the courts of the state

of South Carolina jurisdiction of the parent corporation. In fact such contention has been definitely repudiated by the Supreme Court of the United States in many cases.

It is well settled that ownership of stock in a subsidiary which is doing business within a state does not bring the company owning or controlling the stock within the state in the sense of "transacting business" therein, and does not subject the parent company to local jurisdiction for the purpose of service of process upon it. Peterson v. Chicago, R. I. & P. R. R. Co., 205 U. S. 364, 27 S. Ct. 513, 523, 51 L. Ed. 841; Mechanical Appliance Co. v. Castleman, 215 U. S. 437, 30 S. Ct. 125, 54 L. Ed. 272; Philadelphia & Reading R. R. Co. v. McKibbin, 243 U. S. 264, 37 S. Ct. 280, 282, 61 L. Ed. 710; People's Tobacco Co. v. American Tobacco Co., 246 U. S. 79, 38 S. Ct. 233, 235, 62 L. Ed. 587, Ann. Cas. 1918C, 537; Rosenberg Bros. & Co., Inc. v. Curtis Brown Co., 260 U. S. 516, 43 S. Ct. 170, 171, 67 L. Ed. 372; Bank of America v. Whitney Bank, 261 U. S. 171, 43 S. Ct. 311, 312, 67 L. Ed. 594; Cannon Mfg. Co. v. Cudahy Packing Co., 267 U. S. 333, 45 S. Ct. 250, 69 L. Ed. 634. In these cases the Supreme Court of the United States has clearly and definitely held that the fact that what is popularly known as a subsidiary corporation is doing business in the state is not sufficient to bring the parent corporation therein for the purpose of service of process upon it.

For example, the court in People's Tobacco Company v. American Tobacco Company, supra, speaking through Mr. Justice Day, says: "The fact that the company owned stock in the local subsidiary companies did not bring it into the State in the sense of transacting its own business there."

And again, in Philadelphia & Reading R. R. Co. v. McKibbin, supra, where Mr. Justice Brandeis says: "Nor would the fact, if established by competent evidence, that 'subsidiary companies' did business within the state, warrant a finding that the defendant did business there."

In the Whitney Bank Case, supra, the court said: "The jurisdiction taken of foreign corporations, * * * does not rest upon a fiction of constructive presence. * * * It flows from the fact that the corporation itself does business in the state or district in such a manner and to such an extent that its actual presence there is established."

In case of Cannon Mfg. Co., supra, the plaintiff attempted to obtain jurisdiction of the defendant by serving the process agent of the Cudahy Packing Company of Alabama, which was doing business within the state of North Carolina. The defendant corporation owned the entire capital stock of the Cudahy Packing Company of Alabama. The Cudahy Packing Company of Alabama marketed the products of the defendant within the state of North Carolina by purchasing such products from the defendant and selling to dealers within the state. The goods packed by the defendant outside the state were shipped directly to the dealers from whom the Cudahy Packing Company of Alabama collected the purchase price. In spite of this connection between the two companies, the Supreme Court held that jurisdiction of the defendant could not be obtained by serving the process agent of the Cudahy Packing Company of Alabama.

The court stated in part:

"Through ownership of the entire capital stock and otherwise, the defendant dominates the Alabama corporation, immediately, and completely, and exerts its control both commercially and financially in substantially the same way, and mainly through the same individuals, as it does over those selling branches or departments of its business not separately incorporated which are established to market the Cudahy products in other states. The existence of the Alabama company as a distinct corporate entity is, however, in all respects observed. Its books are kept separate. All transactions between the two corporations are represented by appropriate entries in their respective books in the same way as if the two were wholly independent corporations. This corporate separation from the general Cudahy business was doubtless adopted solely to secure to the defendant some advantage under the local laws." 267 U. S. page 333, 45 S. Ct. 251.

"It [defendant] might have conducted such business through an independent agency without subjecting itself to the jurisdiction. * * * It preferred to employ a subsidiary corporation. Congress has not provided that a corporation of one state shall be amenable to suit in the federal court for another state in which the plaintiff resides, whenever it employs a subsidiary corporation as the instrumentality for doing business therein." 267 U. S. page 336, 45 S. Ct. 251.

"The corporate separation, though perhaps merely formal, was real. It was not pure fiction." 267 U. S. page 337, 45 S. Ct. 251.

That personal jurisdiction of the International Paper Company cannot be obtained by serving an officer of South Carolina Timber Company follows a fortiori from the Cannon Manufacturing Company v. Cudahy Packing Co., supra, Case. All transactions between International Paper Company and South Carolina Timber Company are represented by appropriate entries in their respective books in the same way as if the two were wholly independent just as the two corporations were in the Cannon Manufacturing Company Case. The two corporations are distinct and separate corporate entities. Moreover, the connection and relations between International Paper Company and South Carolina Timber Company are not nearly as direct as those in the Cannon Manufacturing Company Case. The South Carolina Timber Company is not being used as a marketing agent for International Paper Company, but the business of South Carolina Timber Company is conducted separately and distinctly and on its own behalf.

Although in the Cannon Manufacturing Company Case the parent corporation immediately dominated the subsidiary, such is not the situation in the present case. As stated in the affidavits of William N. Hurlbut, all of the stock of the South Carolina Timber Company is owned by International Land Corporation, a corporation created and existing under the laws of the state of Delaware, which in turn is owned by the International Securities Company, a Massachusetts trust created under the laws of the commonwealth of Massachusetts. The stock of International Securities Company is held by directors or officers of the International Paper Company. Hence it clearly appears that the connection between South Carolina Timber Company and International Paper Company is not only insulated by the existence of a corporation and a Massachusetts trust, but also by the fact that the International Paper Company itself does not directly own stock of International Securities Company.

It will serve no useful purpose to consider in detail all the many cases decided by the Supreme Court of the United States of this question. In all these cases, the identity of organization between subsidiary and parent corporation was more or less complete, and yet the court refused to disregard the established rule regarding corporate entity.

For example, in Peterson v. Chicago, Rock Island & Pacific R. R. Co., supra, the undisputed facts showed that from a practical standpoint the relationship between the parent corporation and the subsidiary was practically identical, yet the Supreme Court held that such intercorporate relationship was insufficient to make the two corporations one for purpose of service of process. Mr. Justice Day said: "It is true that the Pacific Company loaned the money to build the road of the Texas company, predecessor to the Gulf company. But, as was well observed by Judge (afterwards Justice) Jackson in United States v. American Bell Teleph. Co. [C. C.] 29 F. 17: 'For one person to supply means for another to do business on is not the doing of that business by the former.'"

The facts in the case above cited with approval by the Supreme Court are illustrative of the strictness with which that court regards service of process upon corporate defendants. The action there was against the American Bell Telephone Company, a Massachusetts corporation, and was brought in Ohio. Service was had upon the Cleveland Telephone Company, in which the Bell Company owned stock, and it was alleged to be an operating agency of the Bell Company in Ohio. The facts alleged in regard to the intercorporate relation are stated by the court in an analysis of the bill of complaint. In a long and well-considered opinion, Judge Jackson held that such facts were not sufficient to make the Bell Company present and doing business in Ohio because of its relation with the local corporation. In conclusion the court said (29 F. page 46): "The various matters relied on to show that the American Bell Telephone Company is to be found in Ohio, and subject to the jurisdiction of this court,—such as its ownership of the telephone instruments used by the licensee corporations; the ownership of stock in one or more of the local companies; the rights and powers reserved to it of resuming possession of its telephone instruments, and taking control of the telephone business, in the event of default on the part of the licensee corporations in complying with the provisions of the license contracts; the sharing in the gross receipts of certain portions of the business done; the reservation of rents and royalties; the right to make changes; and the restrictions and limitations imposed upon the licensee companies,—neither singly nor in the aggregate establish the two essential facts necessary to bring the American Bell Telephone Company within the power and jurisdiction of this court, viz., that said corporation is now, or was at the commencement of this suit, carrying on its business in the state of Ohio, and that it had a 'managing agent' or agents representing it here."

If we consider the test created and established in the Cannon Manufacturing Company Case, in the Whitney Bank Case, in the Bell Telephone Case, and the various other cases cited, can it be reasonably said that the defendants, or either of them, are doing business in South Carolina? Are they doing business "in their own right"? "On their own responsibility?" "For their own account?" There cannot be the slightest doubt that every one of these vital requirements is lacking, so far as their dealings through navigation and timber companies are concerned.

■ Even should we assume that D. H. Hanley was at the time in question agent of the defendants, or either of them, which he clearly was not, it does not follow that jurisdiction of the defendants may be obtained by service upon Hanley, because it is well settled that the fact that an agent of a nonresident corporation may be within the state for some more or less incidental matter in connection with the interest within the state does not render such corporation amenable to suit therein. Green v. C., B. & Q. R. R. Co., 205 U. S. 530, 27 S. Ct. 595, 51 L. Ed. 916; St. Louis S. W. R. R. Co. v. Alexander, 227 U. S. 218, 33 S. Ct. 245, 57 L. Ed. 486; Philadelphia & Reading R. R. Co. v. McKibbin, supra; People's Tobacco Co. v. American Tobacco Co., supra; Rosenberg Bros. & Co. Inc. v. Curtis Brown Co., supra.

In the Green Case a foreign corporation went to the extent of maintaining within the state a place in which several clerks and passenger and freight agents were employed. The business of the agent was to solicit and procure passengers and freight to be transported over the defendant's line. When a prospective passenger desired a ticket the agent took the applicant's money and gave the applicant a prepaid order entitling him to receive upon his arrival in Chicago a ticket over defendant's road. The court held that this foreign corporation was not transacting business within the state.

In the case of Rosenberg Company v. Curtis Brown Company, the Supreme Court of the United States did not consider that a foreign corporation was transacting business within the state of New York by sending officers into the state at regular intervals to purchase goods therein. The defendant corporation had not established a place of business and had no property within the state. The court in its opinion said in part: "But the issues so raised are not of legal significance. The only business alleged to have been transacted by the company in New York, either then or theretofore, related to

such purchases of goods by officers of a foreign corporation. Visits on such business, even if occurring at regular intervals, would not warrant the inference that the corporation was present within the jurisdiction of the state."

The Rules of Substantive Law are Not Applicable to this Matter of Procedure.

■ There are many cases where the courts in dealing with parties properly brought within their jurisdictions have treated subsidiary corporations as one with parent corporations when this action was necessary to do substantial justice. Such cases are cited by plaintiff—a typical one being: Chicago, M. & St. P. R. Co. v. Minneapolis Civic & Commerce Ass'n, 247 U. S. 490, 38 S. Ct. 553, 62 L. Ed. 1229. Also: Bethlehem Motors Corp. v. Flynt, 256 U. S. 421, 41 S. Ct. 571, 65 L. Ed. 1029. This last case deals primarily with the right to impose a license tax and not with service of process. However, these cases have no application to the instant question, because, as pointed out in the Cannon Manufacturing Company Case, supra, the question here involved is whether the parent corporation is present within the state so as to render itself amenable to the jurisdiction of the court, and cases in which the courts have applied the principle of disregarding the corporate entity in order to do substantial justice are not applicable. As the court says: "The corporate separation, though perhaps merely formal, was real. It was not pure fiction. There is here no attempt to hold the defendant liable for an act or omission of its subsidiary or to enforce as against the latter a liability of the defendant. Hence, cases concerning substantive rights, like (citing cases) have no application."

The Plaintiff's Second Claim to Jurisdiction.

Neither can we sustain the plaintiff's second claim to jurisdiction.

■ It is clearly established that the timber and water power rights sought to be attached herein are rights belonging to two South Carolina corporations. The fact that the nonresident defendants own indirectly the greater part of the stock does not render these rights subject to attachment in a suit against the nonresident defendants. The affidavits submitted by the defendants establish this, and the records showing titles to land and the facts relative to the organization of these South Carolina corporations are readily available to all of the parties. If it had been possible to controvert these affidavits by these records, this certainly would have

148

been done. Far from this being done, the evidence introduced by the plaintiff (i. e., the record of the proceedings before the Federal Trade Commission) substantiates the statements contained in these affidavits. Therefore this court holds that neither of the two defendants named here have any property or property rights by reason of their interest in the Columbia Railway & Navigation Company or the South Carolina Timber Company which are subject to attachment under the laws of South Carolina. It follows therefore that the plaintiff's second claim be denied. Greenwood Grocery Co. v. Canadian County Mill & Elevator Co., 72 S. C. 450, 52 S. E. 191, 2 L. R. A. (N. S.) 79, 110 Am. St. Rep. 627, 5 Ann. Cas. 261.

### The Plaintiff's Third Claim to Jurisdiction.

The plaintiff's third claim to jurisdiction grows out of his attempted attachment of certain indebtedness admittedly due by the two South Carolina newspaper corporations to the International Paper Sales Corporation, an admitted sales agency for the International Paper Company. Much is said of the purpose of the defendant corporations in buying the South Carolina newspapers. With the questions before the Federal Trade Commission and the uniting of the Hydroelectric Power interests with paper interests, this court has no concern in this action. Certainly there is nothing illegal with a corporation which manufactures paper or cotton goods, arranging to provide its own power, nor to turn it around is there anything illegal in a corporation which develops power in selling such power to an affiliated consumer. That phase of the matter is not at any rate before us in this action.

The fact is that the International Paper Company, after buying the South Carolina papers, caused them to execute contracts for the purchase of "newsprint" with the International Paper Sales Corporation. It seems then that these contracts were then assigned to the Newfoundland Export & Shipping Company, Limited, a corporation of the colony of Newfoundland. No matter what the purposes of obtaining these contracts and having them assigned were, the indebtedness due on these contracts does not belong to either of these two defendants so as to be subject to attachment under the laws of South Carolina in this action. The plaintiff shows by record evidence that these parent corporations were interested in obtaining these contracts and controlled their assignment. That fact was abundantly established, even admitted, but this does not so affect the independent corporate existence of the International Paper Sales Company, Inc., as to render the indebtedness due to this company, subject to attachment in a suit against the parent corporations. A detailed statement of the evidence on this phase of the case could serve no useful purpose.

### The Plaintiff's Fourth Claim to Jurisdiction.

The court is of the opinion, however, that the jurisdiction and attachment must be sustained on account of the attachment of the plaintiff's indebtedness to the defendant International Paper Company, and of the said defendant's interest, as pledgee, or otherwise, in the stock of the South Carolina newspaper corporations.

The record shows that the plaintiff, La Varre, and Harold Hall borrowed from the defendant International Paper Company approximately $870,000, for which the said defendant now holds the plaintiff's collateral note signed by La Varre for $870,000, secured by all the stock in the Record Publishing Company and in the Spartanburg Herald-Journal Company, South Carolina corporations. The plaintiff in his affidavit and complaint admits the loan and offers to allow the amount thereof to be credited on any judgment which he may obtain against the defendants or either of them in this suit. The defendants in effect claim in their motion papers and supporting affidavits the said indebtedness and security therefor as the property of the International Paper Company.

The contention is made and strongly urged on behalf of the defendants that the attachment must be dissolved upon the ground that the plaintiff can attach neither the indebtedness due by himself to the defendant, nor the security therefor. The court has given this contention very careful consideration, but is of the opinion that the weight of authority and better reason support the validity of the attachment.

It is settled law and expressly provided by the South Carolina attachment statutes and decisions that a debt is subject to attachment as the property of the person to whom such debt is due. See Code Civ. Proc. S. C. 1922, §§ 504, 505, and 510; McKelvay v. South Carolina R. Co., 6 S. C. 446; Campbell v. Insurance Company, 1 S. C. 158; Williamson v. B. & L. Association, 54 S. C. 582, 32 S. E. 765, 71 Am. St. Rep. 822. The position of the defendant is that an exception should be made as to the attachment of an indebtedness due by the plaintiff himself to the defendants.

In considering the question it must be borne in mind that the attachment statutes were, as stated by Mr. Justice Woods in Pelzer Mfg. Co. v. Pitts, 76 S. C. 349, 57 S. E. 29, 32, 11 Ann. Cas. 665, "intended to be *highly remedial,* subjecting to attachment all property interests of the debtor," and also, that, where the statute makes no distinction, the court should make none. Compare Grayson v. Veeche (La.) 12 Mart. (O. S.) 688, 13 Am. Dec. 384.

The court sees no valid basis for a distinction as against the plaintiff. There is no reason why the plaintiff should be denied a right which is accorded to every other creditor. On the contrary it would seem to the court peculiarly unjust and inequitable to allow third parties the privilege of attaching an indebtedness due by the plaintiff himself to a nonresident defendant, and at the same time deprive the plaintiff of the right to attach such indebtedness. This might have the effect of preferring such outside attaching creditors to the hindrance of the plaintiff debtor himself. It seems to the court that as a general rule all the reasons for allowing an attachment of a debt due by any person to the absent defendant are equally applicable as to a debt due by the plaintiff himself, and particularly so where, as in the case at bar, the indebtedness is represented by a negotiable promissory note. The court is very much impressed with and adopts the language of Mr. Justice Washington, then a member of the United States Supreme Court, in the case of Graighle v. Notnagle, Pet. C. C. 245, 10 Fed. Cas. No. 5679, page 948, the leading American case on this subject:

"The law is remedial, and the words of it general, extending the remedy to all creditors, without distinction; and it would seem strange, that the only person who cannot obtain justice, against a non-resident, should be one, who has in his hand, the funds out of which that satisfaction may be had. There would seem to be a manifest injustice, that the plank upon which he might save himself, and upon which he may probably have relied, should be taken from him, and given to other creditors. * * *

"It is not perceived, that any injustice is done to the defendant in the attachment, or that the laws of the state of Pennsylvania or any general principle of law, are violated by this mode of proceeding. * * *

"Upon the whole, this court feels itself authorized to sustain a foreign attachment, which is laid in the hands of the plaintiff; and I am satisfied, that in doing so, we not only fulfil the spirit and intention of the law, but sanction a practice both just and convenient."

Numerous decisions are cited by counsel as supporting both sides of this question.

The following authorities support the right of the plaintiff to attach an indebtedness due by himself to the defendant: Graighle v. Notnagle, Pet. C. C. 245, Fed. Cas. No. 5,679; Sandusky Cement Co. v. A. R. Hamilton & Co. (D. C.) 273 F. 596; Harriman v. Richardson, 51 App. D. C. 24, 273 F. 752; Dudley v. Falkner, 49 Ala. 148; Jos. Joseph & Bros. Co. v. Hoffman, 173 Ala. 568, 46 So. 216, 38 L. R. A. (N. S.) 924, Ann. Cas. 1914A, 718; Grayson v. Veeche (La.) 12 Mart. (O. S.) 688, 13 Am. Dec. 384; Richardson v. Gurney, 9 La. 285; Citizens' Bank v. Hancock, 35 La. Ann. 41; Wehle v. Conner, 83 N. Y. 231; Norton v. Norton, 43 Ohio St. 509, 3 N. E. 348; Moyer v. Lobengeir, 4 Watts (Pa.) 390, 28 Am. Dec. 723; Coble v. Nonemaker, 78 Pa. 501; G. B. Hurt v. Fuller Canneries Co., 263 Pa. 238, 106 A. 248; Pasquinelli Southern Macaroni Mfg. Co., 272 Pa. 468, 116 A. 372; Hanscom v. Chapin, 27 Pa. Super. Ct. 546; Boyd v. Bayless, 4 Humph. (Tenn.) 386; Arledge v. White, 1 Head (Tenn.) 241; Lyman v. Wood, 42 Vt. 113; Gallun v. Weil, 116 Wis. 236, 92 N. W. 1091; Hodges v. Cox, Cro. Eliz. Pt. 2, p. 843, 78 Eng. Reprint, 1070; Egolf Bldg. & L. Ass'n v. Cleaver, 228 Pa. 60, 77 A. 245; Pasquinelli v. Southern Macaroni Mfg. Co., 272 Pa. 468, 116 A. 372; Paramore v. Pain, Cro. Eliz. Pt. 2, p. 598, 78 Eng. Reprint, 841; Morris v. Ludlam, 2 H. Bl. 362, 126 Eng. Reprint, 596.

This is also stated as the rule in Reed on Garnishment, § 30, and notes, and in Drake on Attachment, 930, and in Sargeant on Attachment, 78, and in 12 R. C. L. 841.

In Grayson v. Veeche (La.) 12 Mart. (O. S.) 688, 13 Am. Dec. 384, the court, after discussing numerous authorities, including the above-cited case of Graighle v. Notnagle, says:

"Judge Washington examines the question on general principles; he does not rely on any particular provision in Pennsylvania, but shows that there is not the least impropriety or incongruity in a man attaching a debt which he himself owes. His reasoning appears to us conclusive.

"We do not see that any distinction may be made under the general words of our act of assembly. It authorizes the attachment of the debtor's credits, without distinguishing those which are in the hands of a person who

has a claim against himself, on which an attachment may issue. Ubi lex non distinguit, nec non distinguere debemus."

In the case of Norton v. Norton, 43 Ohio St. 509, 525, 3 N. E. 348, 353, supra, the court said:

"Another question is made; that is, can a plaintiff in attachment garnishee himself? This is a question of statutory construction. By section 5530, of the Revised Statutes, 'any person or corporation is liable as garnishee upon due service of such.'

"This is broad enough to include the plaintiff, whether a person or corporation.

"No good reason can be assigned why an attaching creditor may not reach money or credits in his own hands by garnishee process, as well as any other creditor.

"That he may do so is decided in the following cases: Lyman v. Wood, 42 Vt. 113; Coble v. Nonemaker, 78 Pa. 501. See, also, Drake Att., Attachm. § 543. The same doctrine is supported by numerous authorities cited in Drake."

In the case of Wehle v. Conner, 83 N. Y. 231, construing the New York statute from which the South Carolina attachment laws were copied, the court said:

"That the judgment debtor was also one of the attaching creditors is a fact pressed upon our attention. It is a fact in the case. The question asked is whether it is allowable. We are unable to see why it is not.

"The law which permits the issue of such attachment awards it to all creditors who bring themselves within its provisions. By what right can we assume to draw distinctions and withhold the privilege given to all from particular classes or persons?"

Other cases are cited in the notes in 31 A. L. R. page 711, and 61 A. L. R. 1454, 1458, as supporting the contrary doctrine, and the South Carolina case of Baker v. Doe, 88 S. C. 69, 70 S. E. 431, 34 L. R. A. (N. S.) 510, is particularly relied upon by the defendants. The court has examined many of these cases and finds that most of them do not in fact support that view, and the expressions relied upon are largely dicta. The cases which actually support the negative view, First Nat. Bank of Fort Scott v. Elliott, 62 Kan. 764, 64 P. 623, 55 L. R. A. 353; First International Bank of Minot v. Brehmer, 56 N. D. 81, 215 N. W. 918, 61 A. L. R. 1454, are based upon the express language of the attachment statutes providing that the garnishment proceedings "shall be deemed an action by plaintiff against garnishee and de-

fendant as parties defendant," the statutes considered in the two cases being apparently in the same language. The same is true of the case of Rice v. Sharpleigh Hardware Co. (C. C.) 85 F. 559, which however allowed the plaintiff in effect to attach his indebtedness to the defendant for the purpose of procuring jurisdiction on the equity side.

The case of Baker v. Doe, 88 S. C. 69, 70 S. E. 431, 34 L. R. A. (N. S.) 510, which at first sight might appear to support the defendants' view, will be seen upon close analysis to be clearly distinguishable from the case at bar, and indeed would seem in spirit under the facts of this case to support the plaintiff's right of attachment. In that case the plaintiffs, who were residents of New York and consignees of goods shipped from England, apparently placed money in the hands of their agent in Charleston, S. C., and then sought to attach said funds as the basis of a suit in the South Carolina courts against the defendants, residents of Great Britain, for an alleged shortage in the shipment. The court dismissed the attachment, basing its decision upon the grounds particularly that the funds or indebtedness sought to be attached belonged to the plaintiff and not to the defendant, and that the situs of the indebtedness to the defendant was in New York at the residence of the plaintiffs and not in South Carolina, and that the plaintiffs as consignees and creditors in possession could not be deprived of their rights of set-off. These reasons do not apply here, but appear to be the reverse of the situation in the case at bar. In this case the indebtedness is the property of the defendants (cf. Williamson v. Association, 54 S. C. 582, 32 S. E. 765, 71 Am. St. Rep. 822, citing section 445 of the Code [1894]); the situs of the indebtedness is in South Carolina, the residence of the plaintiff (see Baker Case, and cases there cited, 88 S. C. pages 74–78, 70 S. E. 432–434), and the defendants hold plaintiff's promissory note which they may transfer at any time and cut off all his defenses.

It is also noteworthy that the right of the plaintiff to attach an indebtedness owed by himself to defendant is generally recognized by the custom of London (cf. Drake, § 543; 31 A. L. R. 715) "by reference to which," as stated by the court in the case of McKelvay v. South Carolina R. Co., 6 S. C. 446, "the attachment laws which have heretofore prevailed in this State have always been construed." On the whole this court is satisfied that in this case the plaintiff should be allowed to attach the indebtedness owing by himself to the defendants.

The court has carefully considered the South Carolina attachment statutes and finds nothing therein inconsistent with the plaintiff's right to attach said indebtedness. On the contrary, the spirit of these attachment laws, as has been repeatedly stated by the courts of South Carolina, is highly remedial. It would seem unjust and inequitable to allow the defendants the choice of time and place of suing the plaintiff without giving plaintiff an equal right to sue the defendant. The court sees no good reason or justification for forcing the plaintiff to go to the residence of the defendants in the state of New York in order to sue them. This is particularly true in the case at bar, since the defendants may at any time undertake to transfer the plaintiff's note to citizens of other states and thereby cut off his defenses.

The court therefore sustains the jurisdiction and the attachment as to the indebtedness of plaintiff himself to the defendants, and feels, as was said by Mr. Justice Washington: "That in doing so, we not only fulfil the spirit and intention of the law, but sanction a practice both just and convenient."

It is settled law and apparently conceded by both sides that in questions involving attachments the federal courts will generally be governed by the statutes and decisions of the states in which the attachments were levied.

The Plaintiff's Fifth Claim to Jurisdiction.

The court is also of the opinion that the attachment of the interest of the defendant International Paper Company as pledgee of the stock in the newspaper corporations is good. This right or interest of said defendant is in addition to, and in a sense distinct from, the right to collect the indebtedness from the plaintiff himself. It is in the nature of a separate interest, right, or equity, which the defendant paper company is entitled to under the collateral note and the stock transfer papers. "It must be kept in mind," as was said by the court in the case of Nichols v. Briggs, 18 S. C. 484, and cited with approval by Williamson v. Association, 54 S. C. 597, 32 S. E. 765, 71 Am. St. Rep. 822, "that there is a difference between the debt itself and the securities for it. The debt is one, but there may be a number of securities of different kinds, personal, real, pledge, mortgage, * * * etc. The note given is only evidence of. the debt and one of the means of collecting it, and if there is a mortgage, that is only another security for the same debt." Such interest of the defendants in the stock seems to me to be attachable un-

der the express language of section 510 of the Code, and under the decision of Pelzer Mfg. Co. v. Pitts.

In the Pitts Case above mentioned the court in an able opinion by Mr. Justice Woods held that the equitable interest of the partnership, by way of subrogation, to the rights of the bank as pledgee to 10 shares of stock in the Grendel Mills, was subject to attachment.

The court said:

"The bank however was only pledgee of the stock, and therefore had not the absolute legal title to it, but a special property or lien as security for the debt accompanied by the right of possession. But sections 253 and 254, of the Code of Civil Procedure * * * provide for making available under attachment 'all books of account, vouchers and papers relating to the property, debts, credits and effects' of the debtor, and it will hardly be doubted that, if the attachment had been obtained against the bank by one of its creditors before the debt due by Pitts had been satisfied, his note and the certificates held as security therefor would have been subject to seizure by the sheriff to be made available, by enforcing the rights of the bank therein for the benefit of the attaching creditor. It is true, after the payment of the note of Pitts with the firm assets, the interest of the partnership therein came from subrogation, and was therefore equitable. In this respect it differed from the interest of the bank before it had received payment. Hence, the question arises whether an equitable interest in personal property is subjected to attachment. The conclusion of the circuit judge that such interests are not subject to attachment under our statute must be rejected. * * *

"An examination of the present attachment law of this state leads to the conclusion that it was intended to be highly remedial, subjecting to attachment all property interests of the debtor, whether legal or equitable."

Here the court quotes sections 253, 254, 256, 258, 260, and then continues:

"From these provisions of the statute, especially the expressions we have italicized, it is obvious the intention was to subject to attachment process every property interest of the debtor—not only that which is legal and that capable of actual seizure, but that which is equitable, and that requiring actions either at law or in equity to make it available for the payment of the attachment debt. The change thus made in the attachment law of this state was radical. In one comprehensive enactment not only are the remedies of at-

tachment and garnishment provided for, but the methods of actual seizure, of service of the copy of the writ and notice, of quasi receivership, and of appropriate suits against third persons for subjecting any kind of property interest, equitable as well as legal, to the warrant of attachment."

This case seems to make it clear that the interest of the defendant International Paper Company as pledgee of the stock of these newspaper corporations is subject to attachment. This interest is readily seen to be the interest which the defendants here consider valuable.

The collateral note in this case carried the power to the defendant paper company to sell the stock without notice, and also attached to it separate stock transfer powers. These rights are peculiar and in addition to the right of the defendant paper company to collect the indebtedness from the plaintiff La Varre individually and give the defendant an interest in and to the stock in the newspaper corporations. It is to be noted also that these rights may subsist, even though right to collect the indebtedness from the plaintiff La Varre and/or Hall be barred by the statute of limitation, or bankruptcy, composition, or the like.

It is suggested that the validity of the attachment as to this interest of the defendant paper company in the stock may be affected by the pendency of the suit of Hall against La Varre in the United States District Court for the Southern District of Georgia, and by the orders of the court issued therein. This matter at first gave this court grave concern, but upon further and careful consideration, it appears that there is no conflict between the interest involved in the two cases.

The interest involved in the Georgia suit could at most, it appears to the court, be the equity of redemption or reversionary interest of the plaintiff La Varre and/or Hall in the stock which would necessarily be held by that court subject to the collateral assignment by way of pledge to the International Paper Company. The interest of the International Paper Company, however, in the case is in the nature of an interest in the South Carolina corporations, which therefore has its situs in the state of South Carolina. The interest of the paper company, as pledgee, under the express provisions of our South Carolina statute, section 510, could only be attached and reached by a levy upon the officers of the South Carolina corporations in the state of South Carolina.

Such interest of the paper company was property located in the state of South Carolina (cf. Dial v. Gary, 14 S. C. 573, 37 Am. Rep. 737; Baker v. Doe, 88 S. C. 69, 70 S. E. 431, 34 L. R. A. [N. S.] 510), and of course could not be seized or levied upon in the courts of Georgia. Moreover, under the laws of South Carolina, where such rights must be enforced, the paper company had the right under the collateral note to proceed with the sale of the stock, even if the stocks were held by a receiver of a South Carolina court (National Loan & Exchange Bank v. Hiers, et al. [Ex parte Miley] 125 S. C. 57, 117 S. E. 809), and at least equally so if held by a receiver of a Georgia court.

The court therefore holds that the attachment by the plaintiff of the paper company's interest in the stock was an attachment merely of property located in South Carolina, which was not involved in the Georgia suit, and did not in any wise trespass upon or interfere with any rights which the court in the Georgia suit has to adjudicate, or administer the equity of redemption or reversionary interest of La Varre and Hall in said stock.

It also appears from the record filed with the court that the physical stock itself was placed in the Georgia court some time after the attachment in this suit was levied, under a stipulation expressly reserving the rights therein of the parties in any litigation with any other persons not parties to that suit.

It is also doubtful whether the objection of the stock being in custodia legis can be properly considered by this court in as much as the position was not made in the motion papers. See Barfield v. Coker, 73 S. C. 181, 53 S. E. 170; rule 57, Circuit Court Rules. But this is a highly technical view, and we prefer to consider the effect of the Georgia proceedings. But the ruling of the Georgia court reinforces our view that the International Paper Company has an equitable right in the stock of the two South Carolina corporations. Its rights as pledgee are not only as against La Varre, but as against Hall as well. The Georgia court has held specifically as to the relations between these parties.

"That the parties hereto (Hall and La Varre) are jointly liable on the obligations of said joint enterprise." The joint enterprise was the purchase of these papers by Hall and La Varre and the pledge of the stock. The obligation was the joint obligation of Hall and La Varre as evidenced by the note and secured by the pledge of the stock. The equity of the International Paper Company therefore in the stock is as much to secure Hall's indebtedness as La Varre's. The plaintiff has not only attached La Varre's in-

debtedness to the International Paper Company, but he has attached all of the rights which the International Paper Company has in this pledged stock. As the matter now stands, giving full force and effect to Judge Deaver's Decree (September 30, 1929), this stock is pledged as security for the debt of the "joint enterprise" of Hall and La Varre, not La Varre alone.

Furthermore, the purpose for which the Georgia court took charge of this stock were purposes of operation and control, and for this purpose it had a right to do so. But the administration of these corporations by a Commissioner of the Georgia court does not abrogate an existing equity which the International Paper Company had already acquired as pledgee. The plaintiff has not attached the stock so as to prevent the Georgia court from operating the newspaper corporations; he has attached an equity which the International Paper Company has in this stock, no matter who operates and controls the corporation. The pledgee has a right to its equity whether Hall, La Varre, or any officer of the Georgia court votes the stock in a directors' meeting. The operation by the Georgia court may affect, one way or another, the value of the rights (enforceable in South Carolina) which the International Paper Company has in this stock, but it does not abrogate or put an end to the existence of this right.

For all these reasons, the attachment and the jurisdiction will be sustained, in so far as it is based upon the attachment of the indebtedness of the plaintiff, La Varre, to the International Paper Company, and upon the attachment of the interest of the said paper company in the stock in the newspaper corporations.

The service and attachment both will be set aside as to the International Paper and Power Company. Let a decree be filed accordingly, giving effect to the decision herein made.