Rafael Buscaglia, Treasurer of Puerto Rico, Petitioner, *v.*
Tax Court of Puerto Rico, Respondent.

No. 16.   Argued January 15, 1945.—Decided March 5, 1945.—
Rehearing denied March 23, 1945.

576

*Jesús A. González, Acting Attorney General,* and *A. D. Marchand Paz, Assistant Attorney General,* for petitioner. *James R. Beverley, R. Castro Fernández,* and *José López Baralt,* for intervener, complainant in the main proceeding.

Mr. Chief Justice Travieso delivered the opinion of the court.

On July 9, 1943, South Porto Rico Sugar Company (of New Jersey), a corporation organized under the laws of the State of New Jersey, with its principal office located in the city of Newark, in said State, filed a petition for appeal in the Tax Court of Puerto Rico, in which it alleged, in brief, the following:

That pursuant to the law then in force, the appellant corporation filed its income tax return covering the period from October 1, 1941, to September 30, 1942; that on May 27, 1943, the Treasurer of Puerto Rico sent to the appellant a notice of deficiency pertaining to the fiscal year 1942, which amounted to $28,907.20; that the Treasurer determined and fixed said deficiency by increasing the tax rate from 18 per cent to 20 per cent for the period elapsed from October 1, 1941, to June 30, 1942, and from 20 per cent to 22 per cent for the period from July 1 to September 30, 1942, that the appellant requested a reconsideration of said determination of deficiency and the holding of an administrative hearing, and the Treasurer denied both requests. In support of its appeal, the appellant corporation alleged that the imposition of an additional 2 per cent tax on foreign corporations, as provided by Act No. 23 of November 21, 1941 (Spec. Sess. Laws, p. 72), and Act No. 20 of December 3, 1942 (Spec. Sess. Laws, p. 96), is illegal, unconstitutional, and void, (a) because it denies to the taxpayer the equal protection of the laws; (b) because it violates the provision contained in the Organic Act, that the rule of taxation shall be uniform; and (c) because it establishes an unlawful discrimination against foreign corporations based on the mere fact of their not having been organized under the laws of Puerto Rico; all of which is in contravention of the Fifth and Fourteenth Amendments to the Federal Constitution and of § 2 of the Organic Act of Puerto Rico and deprives the appellant taxpayer of its property without due process of law. The Treasurer demurred to the petition on the ground that the same did not state facts sufficient to constitute a cause of action.

On June 28, 1944, the Tax Court rendered a decision sustaining the petition and ordering the Treasurer to reassess the tax on the appellant corporation at the same rate fixed by law for domestic corporations. The Treasurer thereupon

filed a petition for certiorari in this court, praying that we review and set aside said decision.

Before entering into a discussion and determination of the constitutional question involved in the present proceeding, it seems advisable to state that the decision of the Tax Court declares the statute unconstitutional only as to its application to "every foreign corporation or partnership located within the jurisdiction of this country," without expressing any opinion whatsoever regarding the constitutionality of its application to those foreign corporations or partnerships which are not domiciled or have not been admitted to do business in Puerto Rico but which derive income from sources within Puerto Rico. In the petition for appeal filed in the Tax Court it was alleged merely that the appellant, South Porto Rico Sugar Co., "is a corporation organized under the laws of New Jersey and engaged in the purchase and sale of sugar and other products, with its principal office located in Newark, New Jersey, and the city of New York." From the record submitted to us it does not appear that said corporation has been authorized to do business in Puerto Rico or that it has done such business without first obtaining a license. The petition is verified by James R. Beverley, who signed it as "agent of the appellant in this case, a non-resident foreign corporation." We must, therefore, consider and decide the case as one involving a foreign corporation, not domiciled or authorized to do business in Puerto Rico, which has derived income from sources located within this jurisdiction.

The notice of deficiency issued by the Treasurer was based on the provisions of § 28 of the Income Tax Act, as amended by Act No. 23 of November 21, 1941, which reads as follows:

"Section 28.—(a) There shall be levied, collected, and paid for each taxable year on the net income of every corporation or partner-

ship a tax of twenty (20) per cent on the net income in excess of the credits provided for in Section 34, except that domestic corporations and partnerships shall pay a tax of eighteen (18) per cent."

Said § 28 was again amended by Act No. 20, approved December 3, 1942, by increasing to 22 per cent the tax on foreign corporations and partnerships and to 20 per cent in the case of domestic corporations and partnerships.

From a mere reading of § 28(a), as the same was finally amended, it is evident that it was the purpose of the lawmaker to impose on domestic corporations and partnerships a tax of 20 per cent on their net income and on foreign corporations and partnerships, subject to taxation in Puerto Rico, a tax of 22 per cent on their net income. The higher tax—that of 22 per cent—is imposed on the latter entities solely because they are foreign, that is, because they have not been organized or constituted under the laws of Puerto Rico.

The Tax Court of Puerto Rico in its decision establishes a distinction between foreign corporations "which are within the jurisdiction of this country," that is, those which have registered in Puerto Rico under the Law of Private Corporations, and those which have not been authorized to engage in business in Puerto Rico; and it reaches the conclusion that the former can not be compelled to pay the 22 per cent tax.

There is no doubt that the Legislature may divide, the taxpayers into various classes and impose on each class a rate of taxation different from the ones imposed on the other classes. In the exercise of that power, the Legislature, by enacting § 28(a), *supra,* as finally amended, established two classes: (a) domestic corporations or partnerships and (b) foreign corporations. We must, therefore, consider the statute as one which imposes a higher tax rate on all foreign corporations, that is, on those corporations which have not been organized under the laws of Puerto Rico.

In the case of *Ballester* v. *Court of Tax Appeals,* 61 P. R.R. 460, this court considered § 1 of Act No. 159 of 1941 (Laws of 1941, p. 972), which imposed a higher rate of taxation on the income of a resident alien than on the income of a resident citizen. We held that such a legal provision was unconstitutional and void as violative of the equal protection and uniformity of taxation clauses of the Organic Act.

The classification established by § 28(*a*), *supra,* is based solely on the fact of alienage (*extranjería*) of the corporations or partnerships organized outside of Puerto Rico. Under the terms of the statute, the fact that a corporation or partnership, which derives income from sources within Puerto Rico, has been organized in one of the states of the American Union or in a foreign country, will be sufficient to justify the imposition of the 22 per cent tax, applicable to foreign corporations, and not the 20 per cent tax applicable to domestic corporations, without the statute making any distinction between foreign corporations which have been authorized to do business in Puerto Rico and those which have not been so authorized.

In order that a classification may be considered valid it must be based "upon some distinction which can rationally and fairly be made the reason for different taxation." *Rivera* v. *District Court,* 62 P.R.R. 491, and *San Juan Trading Co.* v. *Sancho, Treasurer,* 114 F.(2d) 969. The Federal Supreme Court, in *Bell's Gap R'd. Co.* v. *Pennsylvania,* 134 U. S. 232, held that "clear and hostile discriminations against particular persons and classes, especially such as are of an unusual character, unknown to the practice of our governments, might be obnoxious to the constitutional prohibition." See 4 Cooley on Taxation, p. 3486, § 1752 (1924 ed.); and *Hartford S. B. I. & Ins. Co.* v. *Harrison,* 301 U. S. 459, 81 L. ed. 1223.

The question of the constitutionality of the statute must be divided into two parts: (1) as to its application to

foreign corporations which have obtained licenses to do business in Puerto Rico; and (2) as to its application to foreign corporations which have not complied with that requisite.

1. Section 2 of the Organic Act of Puerto Rico provides:

"That no law shall be enacted in Puerto Rico which shall deprive any person of life, liberty, or property without due process of law, or deny to *any person therein* the equal protection of laws. (Paragraph 1.)

" * 　　* 　　* 　　* 　　* 　　* 　　*

"That the rule of taxation in Puerto Rico shall be uniform." (Paragraph 2.)　 (Italics ours.)

The Fourteenth Amendment to the Constitution of the United States provides that no state shall deprive any person of his property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.

Is a foreign corporation which, in accordance with the insular statutes, has been authorized to do business in Puerto Rico, a person in that island or within its jurisdiction, entitled to the equal protection of the laws and, hence, to be free from the imposition of a rate of taxation higher than the one imposed by the insular law on domestic corporations?

This question must be answered in the affirmative. It is a well-settled doctrine that "a corporation which is allowed to come into a state and there carry on its business may claim, as an individual may claim, the protection of the Fourteenth Amendment against a subsequent application to it of state law,"[1] and that a corporation, even though it is not a citizen within the meaning of the privileges and immunities clause (*Paul* v. *Virginia,* 8 Wall. 168, 19 L. ed. 357) "is a 'person' within the meaning of the equal protection and the due process of law clauses."[2]　 The equal protection

---

[1] *Connecticut Gen. Life Ins. Co.* v. *Johnson,* 303 U.S. 77, 82 L. ed. 673; *Bethlehem Motors Corp.* v. *Flynt,* 256 U.S. 421, 65 L. ed. 1029.

[2] *Grosjean* v. *American Press Co., Inc.,* 297 U.S. 233, 80 L. ed. 660; *Liggett Co.* v. *Lee,* 288 U. S. 517.

of the laws means subjection to equal laws, applying alike to all in the same situation. From the moment a foreign corporation becomes a person within the jurisdiction of a state by reason of having obtained a license to do business therein, it is entitled to enjoy the same rights which the law grants to, and to bear the same burdens as the law imposes upon, other persons in a like situation.[3]

The case of *Hanover Fire Ins. Co. v. Harding*, 272 U. S. 494, 71 L. ed. 372, presents facts which are similar to those of the case at bar. Since 1869, the State of Illinois had enacted a law which provided that each foreign insurance company licensed and admitted to do business in Illinois, was bound to report annually the amount of the net receipts of any agency established by it within the State. Said net receipts must be included in the tax lists and be subjected to the same tax imposed by law on other personal property. Domestic corporations were not required to pay said tax. In. an injunction proceeding instituted by Hanover Fire Ins. Co., the latter alleged that the above-mentioned statute denied to it the equal protection of the laws of .the State of Illinois and was therefore unconstitutional. The Supreme Court of Illinois upheld the validity of the statute, upon the ground that the payment of the tax on the net receipts was a part of the condition which the plaintiff, as a foreign corporation, was obliged to perform, in order to maintain and retain its right to do business in the State. The Supreme Court of the .United States held that, even though it was settled that foreign corporations are not entitled to do business in a state except by the consent of the state, and that the latter may exclude them arbitrarily or impose conditions upon their engaging in business within its jurisdiction, there is a very important qualification to this power of the state, namely, that "the State may not exact as a condition of the corporation's engaging in business within its limits that its

---

[3] *Southern R. Co. v. Greene*, 216 U.S. 400, 54 L. ed. 536. See *Ballester v. Court of Tax Appeals*, 61 P.R.R. 460.

rights secured to it by the Constitution of the United States may be infringed.'' The judgment of the Supreme Court of Illinois denying the injunction sought was reversed, and the Federal Supreme Court said:

"In subjecting a law of the State which imposes a charge upon foreign corporations to the test whether such a charge violates the equal protection clause of the Fourteenth Amendment, a line has to be drawn between the burden imposed by the State for the license or privilege to do business in the State, and the tax burden which, having secured the right to do business, the foreign corporation must share with all the corporations and other taxpayers of the State. With respect to the admission fee, so to speak, which the foreign corporation must pay, to become a *quasi* citizen of the State and entitled to equal privileges with citizens of the State, the measure of the burden is in the discretion of the State, and any inequality as between the foreign corporation and the domestic corporation in that regard does not come within the inhibition of the Fourteenth Amendment; but, after its admission, the foreign corporation stands equal, and is to be classified with domestic corporations of the same kind.

‘‘\* \* \* \* \* \* \*

"By compliance with the valid conditions precedent, the foreign insurance company is put on a level with all other insurance companies of the same kind, domestic or foreign, within the State; and tax laws made to apply after it has been so received into the State are to be considered laws enacted for the purpose of raising revenue for the State and must conform to the equal protection clause of the Fourteenth Amendment."

Applying the foregoing decisions to the case at bar, we must hold that the Tax Court of Puerto Rico did not err in deciding, as it did, that the imposition on a foreign corporation, authorized to do business in this island, of an income tax rate higher than the one imposed by the same statute on corporations organized under the laws of this island, would deny to said foreign corporation the equal protection of the laws, in contravention of the provisions of paragraph 1 of § 2 of the Organic Act and in contravention of the provisions of paragraph 22 of that same Section, which requires uniformity in the imposition of taxes.

■ Is a foreign corporation, which has not been authorized to do business in this island, entitled to invoke the provisions of the Insular Organic Act and of the Federal Constitution regarding the equal protection of the laws and uniformity of taxation?

We are of the opinion that this question must be answered in the negative. The authorities which we have examined hold that a corporation, like a natural person, must be "within the jurisdiction of the state" in order to be entitled to the equal protection of the laws. The general rule is that a foreign corporation which is not doing business within a state and which is not subject to process issuing from its courts, is not a "person within its jurisdiction," and hence not entitled to the equal protection of the laws of said state. *Blake* v. *McClung*, 172 U. S. 239, 43 L. ed. 432; 23 Am. Jur., Foreign Corporations, § 50, and cases cited therein.

The Tax Court did not err in holding that the assessment to a foreign corporation, not authorized to do business in this island, of a tax on its net income at the rates of 20 per cent and 22 per cent fixed by § 28 of Act No. 23 of 1941, and by that same Section, as amended by Act No. 20 of 1942, does not violate any provision of the Organic Act or of the Federal Constitution. Nevertheless, said court committed manifest error in applying its correct interpretation of the law to the facts of the case.

■ We have already stated that, according to the allegations of the petition, and without there being any showing in the record to the contrary, South Porto Rico Sugar Co. (of New Jersey) is a foreign corporation, without residence in Puerto Rico and without a license to do business in the Island; and that the petition has been verified and signed by James R. Beverley as "attorney in fact of the appellant in this case, a nonresident and foreign corporation." The facts alleged in the petition were expressly admitted by the Treasurer, who moved to dismiss said peti-

tion. The case was submitted upon the pleadings, which made it unnecessary to introduce any evidence.

Nevertheless, the Tax Court, after admitting that South Porto Rico Sugar Co. is a corporation organized outside this island and domiciled in the State of New Jersey, reached the following conclusions:

1. That the appellant corporation is engaged in the purchase and sale of sugar and other products in Puerto Rico and derives income from sources within Puerto Rico, "and it must be presumed that it has complied with the local laws and that it is authorized to sue and be sued here and to do business in **Puerto Rico, and that it has** established an office in San Juan and holds property in the Island."

2. That by **reason of the facts alleged by the parties and** of the presumptions set forth in the preceding paragraph, the appellant corporation is within the jurisdiction of Puerto Rico.

3. That being within the jurisdiction of Puerto Rico, the appellant corporation is entitled to the equal protection of the laws, and therefore it can not be subjected to a tax higher than the one imposed on corporations organized in Puerto Rico.

The foregoing conclusions are clearly erroneous. They are not supported by either the pleadings or any evidence; and, furthermore, they are in open conflict with the allegations of the appellant itself. Although the appellant corporation alleged that it was engaged in the "purchase and sale of sugar and other products," it neither alleged nor proved that those purchases or sales were effected in Puerto Rico. We are not aware of any law which would justify the presumption that a nonresident foreign corporation engaged in the purchase of sugar makes such purchase within the jurisdiction of the Island of Puerto Rico. The alleged presumption that South Porto Rico Sugar Co. has complied with the laws of Puerto Rico and is authorized to do business in Puerto Rico, that is, that by virtue of such a

presumed compliance with the law it has become a person within the insular jurisdiction, entitled to the equal protection of the laws, is untenable, first, because it is derived from or based upon the facts, neither alleged nor proved, that the corporation is engaged in the purchase of sugar in Puerto Rico, has established an office in San Juan, and owns property in Puerto Rico; [7] second, because the rebuttable presumption that the law has been complied with can only be invoked by those persons who are bound to comply with its provisions. Foreign corporations are not required by any law to register in Puerto Rico. It is only when they desire to engage in business within the insular jurisdiction that the law imposes upon them the obligation of applying for a license. [8] Hence, there is no legal presumption in favor of a foreign corporation which invokes the equal protection of the laws. It is incumbent upon it to allege and prove that it is a person within the insular jurisdiction by reason of its having complied with the law and obtained a license to do business in Puerto Rico. Even if we conceded the existence of said presumption, we would always have to reach the unavoidable conclusion that the same was overcome by the appellant's own allegation that it was a foreign corporation with no residence in Puerto Rico. [9] Nor can it be presumed that the appellant corporation has been authorized to do business in Puerto Rico from the mere fact that said corporation derives its income from sources within Puerto Rico, for there is no doubt that a foreign corporation which holds stock in a domestic corporation is not required to register in Puerto Rico as a condition precedent to its receiving any dividend declared on said stock. 23 Am. Jur. § 26.

For the reasons stated, the decision rendered by the Tax Court on June 28, 1944, is reversed and the case remanded to that court for further proceedings not inconsistent with this opinion.

ON MOTION FOR REHEARING

March 23, 1945

Mr. Chief Justice Travieso delivered the opinion of the court.

The intervener, South Porto Rico Sugar Company (of New Jersey), feeling aggrieved by our decision of March 5, 1945, has asked us to reconsider the same and render another instead declaring that the application of § 28(a) of the Income Tax Act to foreign corporations not authorized to do business in Puerto Rico, is also unconstitutional.

The intervener admits that our former decision is correct in so far as it holds that the right to the equal protection of the laws may be invoked only by individuals or corporations who are within the insular jurisdiction. The ground of its objection to said decision is that, as the provisions of the twenty-first paragraph of § 2 of the Organic Act of Puerto Rico, to the effect that "the rule of taxation in Puerto Rico shall be uniform," do not contain any territorial limitation, said provisions should equally protect all individuals and corporations, those within as well as those without the insular jurisdiction. The intervener adds that "if the National Congress had sought to limit the protection provided by the uniformity clause, it would have been very easy to draft said clause in like terms as the equal protection clause," so as to read thus: "The rule of taxation in Puerto Rico shall be uniform *for every person in said island.*"

The purpose of the uniformity clause is to prevent discrimination against individuals or corporations similarly situated. That is why we held that the income tax should be the same for domestic corporations and for foreign corporations which have established a residence in Puerto Rico by obtaining a license to do business within the insular jurisdiction. On foreign corporations thus registered in Puerto Rico there can not be imposed a rate of taxation higher than

the one imposed on domestic corporations, solely because the former are foreign, without violating the constitutional provisions regarding the equal protection of the laws and uniformity of taxation.

In *Ballester* v. *Court of Tax Appeals,* 61 P.R.R. 460, it was sought to impose a higher rate of taxation on a resident alien, and the Treasurer based such imposition upon the mere fact of alienage of the taxpayer. We held that the imposition was illegal and violative of the two constitutional provisions above mentioned.

The argument that if Congress had sought to limit the protection of the uniformity clause it could have accomplished such purpose merely by adding to said clause the phrase "for every person in said Island," is not convincing. The addition of said phrase would have deprived the Legislature of the power to divide the taxpayers into classes and to impose on each class a rate of taxation different from those imposed on the other classes; and in such case any individual or corporation domiciled in the Island could demand exemption from the imposition of a rate of taxation higher than the minimum rate imposed by the law upon any other individual or corporation, regardless of the character of the business in which said individual or corporation were engaged. The fact that the territorial limitation suggested by the intervener was not added to the twenty-second paragraph of § 2 of the Organic Act is the best indication that Congress intended to confer on the Insular Legislature the power to classify taxpayers and to impose on each class a different rate of taxation.

In the exercise of that power to classify taxpayers, the Insular Legislature, by enacting § 28(a) of the Income Tax Act, divided the corporations into two classes: (a) those incorporated in Puerto Rico; and (b) those incorporated in other jurisdictions. It imposed a 20 per cent tax on the in-

come of the former and a 22 per cent tax on the income of the latter. When the Treasurer sought to collect the higher tax from foreign corporations which had obtained a license to do business in Puerto Rico solely because they were foreign, we held that by such action the Treasurer was denying to said corporations, who had become *persons in said Island* immediately upon obtaining a license, the equal protection of the laws and likewise violating the uniformity clause. It was in connection with the division of the corporations authorized to do business in Puerto Rico, into two classes, to wit, (1) those organized in Puerto Rico, and (2) foreign corporations registered in Puerto Rico, that we held that such a classification was illegal as it was not based "upon some distinction which can rationally and fairly be made the reason for different taxation."

The grouping of corporations into two classes, (1) domestic corporations and foreign corporations authorized to do business in the Island, and (2) foreign corporations with no residence in Puerto Rico, is based on a distinction which, in our judgment, constitutes a sufficient reason for the difference in the rates of taxation. A foreign corporation which receives income from sources within Puerto Rico and which chooses to remain in a condition of complete alienage in relation to the Island, without submitting itself to the jurisdiction of the local tribunals and without contributing in any way to the support of the government that protects the sources from which it derives income, is not entitled to the equal protection of the provisions of law requiring uniformity in the imposition of taxes, or to be included in the same class as the corporations organized or domiciled in accordance with the laws of this jurisdiction.

The difference of 2 per cent between the rate of taxation imposed on domestic corporations and foreign corporations registered in this island and the one imposed on nonresident foreign corporations is not unreasonable nor arbi-

trary and should be upheld as a lawful exercise of the legislative power to classify taxpayers and to impose upon them different tax rates.

The reconsideration sought must be denied.