BETHLEHEM MOTORS CORPORATION ET AL., *v.* FLYNT, SHERIFF OF FORSYTH COUNTY, NORTH CAROLINA, ET AL.

ERROR TO THE SUPREME COURT OF THE STATE OF NORTH CAROLINA.

No. 254. Submitted March 22, 1921.—Decided June 1, 1921.

A North Carolina statute (Laws 1917, c. 231) provided that every manufacturer of automobiles engaged in the business of selling them in the State must pay a license tax of $500 before selling or offering for sale, and made like requirement of every person or corporation there engaged in selling automobiles of a manufacturer who had not paid such tax, but further provided that, if an officer or representative of such manufacturer should file a sworn statement showing that at least three-fourths of the entire assets of the manufacturer were invested in bonds of the State or its municipalities or in property therein situate and returned for taxation, the license tax should be reduced to $100. As applied to two corporations of other States which made automobiles outside of North Carolina and a third which distributed them there through local agencies to which the automobiles were consigned for sale,—

*Held:* (1) That, assuming the corporations were doing business in North Carolina and were subject to her jurisdiction, the statute worked a discrimination against them, contrary to the Fourteenth Amendment. P. 424.

(2) That, without such assumption, it discriminated against their products, in violation of the commerce clause. P. 426.

178 N. Car. 399, reversed.

ERROR to a judgment of the Supreme Court of North Carolina sustaining a state license tax in a suit to restrain its enforcement. The facts are stated in the opinion.

*Mr. J. E. Alexander* for plaintiffs in error.

*Mr. James S. Manning,* Attorney General of the State of North Carolina, for defendants in error. *Mr. Frank Nash* was also on the brief.

MR. JUSTICE McKENNA delivered the opinion of the court.

The defendants in error are, respectively, Sheriffs of Forsyth and Guilford Counties, North Carolina. Under the laws of the State, for the non-payment of a license tax, the former levied on a motor truck belonging to the Bethlehem Corporation (referred to as the Pennsylvania Corporation); the latter levied on a car belonging to the National Motor Car and Vehicle Corporation (referred to as the Indiana Corporation). The trucks are manufactured in Pennsylvania, the cars in Indiana; and they are distributed in North Carolina and other States through W. Irving Young & Company, (referred to as the Delaware Corporation) a corporation of the State of Delaware, which conducts its business in North Carolina by the Liberty Motors Corporation and the National Motors Company, these companies being corporations of North Carolina. And it is the finding or conclusion of the trial court that "both corporations thereupon were and became the agents" of the three other corporations "for the purpose of selling and delivering said trucks and automobiles." They were consigned to the two latter companies and were sold direct by them from their storage warehouse, being consigned to them for that purpose and not to be used exclusively as samples or for demonstration purposes, nor used or intended to be used simply for the purpose of soliciting orders to be filled by shipment from the place of their manufacture.

Plaintiffs in error brought this suit in the Superior Court of Forsyth County to restrain the defendants in error from selling the truck and car. A preliminary restraining order was granted. It was subsequently dissolved. The order of dissolution was affirmed by the Supreme Court, thereby sustaining the license tax and the levy upon the automobiles made to enforce it.

A summary of the act by which a license is required is necessary. It provides in § 72 of c. 231, Laws of 1917, that every manufacturer of automobiles "engaged in the business of selling the same in this State, or every person or persons or corporation engaged in selling automobiles in this State, the manufacturer of which has not paid the license tax provided for in this section, before selling or offering for sale any such machine, shall pay to the State Treasurer a tax of five hundred dollars and obtain a license for conducting such business." The name of the machine must accompany the application for a license, which must be in writing. A licensee may employ an unlimited number of agents, but each county of the State may levy a tax on each agent. Besides some other provisions, there is one (and it is of special pertinence in the case) "that if any officer, agent, or representative of such manufacturer shall file with the State Treasurer a sworn statement showing that at least three-fourths of the entire assets of the said manufacturer of automobiles are invested" in the bonds of the State or any of its counties, cities or towns, or in property situated therein, and returned for taxation, the taxes named in the section shall be one-fifth of those named. Upon the renewal of a license that shall have been in force less than six months, a rebate of $250 is allowed on the new license.

Two contentions are made by the plaintiffs in error:

(1) That the act imposing the tax offends the equal protection of the laws clause of the Fourteenth Amendment of the Constitution of the United States.

(2) That the act attempts to regulate interstate commerce in contravention of the commerce clause of the Constitution.

The contentions depend upon different considerations. The basis of the first is that the corporations are discriminated against; the basis of the second is that their products are. The contentions, therefore, should not be

confused. They fall under two heads: (1) If the Pennsylvania Corporation and the Indiana Corporation and the Delaware Corporation are doing business in the State, and, therefore, within its jurisdiction, they undoubtedly can complain of a discrimination against them that is offensive to the Fourteenth Amendment. *Southern Ry. Co.* v. *Greene,* 216 U. S. 400, 415. (2) If, however, they are not in the State and subject to its jurisdiction and seek to enter, the tax may be considered a condition which the statute may impose, (*Paul* v. *Virginia,* 8 Wall. 168, and a number of subsequent cases, including *Southern Ry. Co.* v. *Greene, supra*), unless, as plaintiffs in error contend, the tax is a discrimination against their products.

These contentions we will consider in their order, keeping them as separate as possible.

(a) This court has decided too often to need citation of the cases that corporations doing business in a State and having an agent there are within the jurisdiction of the State for the purpose of suit against them, and we may assume that the principle is applicable here and that the Pennsylvania Corporation, the Indiana Corporation and the Delaware Corporation are within the jurisdiction of the State and subject to its laws, equally with the corporations of the State. It will be observed, however, that the act under review applies to all manufacturers and persons engaged in selling automobiles in the State. The act makes no distinctions between non-resident and resident manufacturers. Wherein, then, is there discrimination? It is contended to be in the provision which reduces the tax to one-fifth of its amount—from $500 to $100—if the manufacturer of the automobiles has three-fourths of his assets invested in the bonds of the State or some of its municipalities, or in other property situated therein and returned for taxation. The provision is declared to be impossible of performance and its effect to be that a manufacturer not having such investment of property is

charged $500 for a license and one having such invest-
ment of property is charged only $100.   And plaintiffs in
error, it is asserted, are necessarily in the $500 class.   The
contrasting assertion is that local manufacturers are in
the $100 class, and that, therefore, there is illegal discrim-
ination in their favor.

In explicit specification of such discrimination plaintiffs
in error assert that the provision as applied to them is
"contrary to all common sense," and that the Supreme
Court conceded the improbability of compliance with
it by the manufacturer of another State.

The Attorney General of the State seems to concur in
the denunciation and adds to it the declaration that the
insistence of the act is of an "utterly futile project" but
adds, in order to remove or palliate its discrimination, it
is as "futile" to manufacturers of the State as to manu-
facturers of other States, and considers it nugatory.   His
words are, "from nothing, nothing can arise," and that
"discrimination cannot be predicated upon any scheme
which is not workable."   He therefore dismisses the provi-
sion as not applicable.

May we accept his view of it, that is, regard the condi-
tion as a mere *brutum fulmen,* imposing no condition or
burden, against the decision of the Supreme Court of the
State?   The court has assumed its efficacy and regarded
it as a legal condition upon the Pennsylvania Corporation,
the Indiana Corporation, and the Delaware Corporation,
doing business in the State.   We are unable to concur in
this conclusion.   It is a perilous power to concede to the
State, and it is immediately manifest that it can be
exerted to prevent all commerce of those corporations (or
other corporations) with the State except as the com-
merce might be through direct personal purchases and im-
portations.   In other words, the power can be exerted to
exclude the products of those corporations, and every other
corporation, if they have, or it has, agents in the State.

But if that provision can be dismissed as nugatory, as the Attorney General asserts, we encounter the alternative provision which requires the investment of a like proportion of assets of foreign manufacturers in property in the State returned for taxation. In resistance to the assertion that the provision discriminates against non-resident manufacturers, the Attorney General contends that it is as applicable to resident manufacturers as to non-resident manufacturers, and, of course, his inference is that its condition can be performed as easily by one as by the other, and discriminates against neither.

To this we cannot assent. The condition can be satisfied by a resident manufacturer, his factory and its products in the first instance being within the State; it cannot be satisfied by a non-resident manufacturer, his factory necessarily being in another State, some of its products only at a given time being within the State. Therefore, there is a real discrimination, and an offense against the Fourteenth Amendment, if we assume that the corporations are within the State.

(b) If they are not within the State, their second contention is that the act is an attempt to regulate interstate commerce. If it have that effect it is illegal, for a tax on an agent of a foreign corporation for the sale of a product is a tax on the product, and, if the product be that of another State, it is a tax on commerce between the States. *Welton* v. *Missouri,* 91 U. S. 275; *Webber* v. *Virginia,* 103 U. S. 344; *Darnell & Son Co.* v. *Memphis,* 208 U. S. 113. This is the assertion of plaintiffs in error; defendants in error oppose a denial to the assertion and the denial is supported by the Supreme Court on the authority of *Brown* v. *Houston,* 114 U. S. 622; *Singer Sewing Machine Co.* v. *Brickell,* 233 U. S. 304. The basis of the denial and its support by the Supreme Court is that the automobiles had passed out of interstate commerce and had reached repose in the State, and blend with the other things of the

State, and became subject to intrastate regulation. It is doubtful if that be a justifiable deduction from the findings of the 'trial court. But comment is not necessary. It is the finding of the court that the automobiles were in the hands of the agents of the consigning corporations, and therefore, a tax against them was practically a tax on their importation into the State. It is not necessary to say it would be useless to send them to the State if their sale could be prevented by a prohibitive tax or one so discriminating that it would prevent competition with the products of the State. This is the ruling of the cases which we have cited. It is especially the ruling in *Darnell & Son Co.* v. *Memphis, supra.* The imposition of such a tax is practically the usurpation of the power of Congress over interstate commerce, and therefore illegal.

*Judgment reversed and cause remanded for further proceedings not inconsistent with this opinion.*

MR. JUSTICE PITNEY and MR. JUSTICE BRANDEIS dissent.