Carlos HERNANDEZ et al., Appellants,

v.

HOUSTON INDEPENDENT SCHOOL
DISTRICT et al., Appellees.

No. 12650.

Court of Civil Appeals of Texas,
Austin.

Nov. 16, 1977.

Rehearing Denied Dec. 7, 1977.

Peter D. Williamson, Houston, for appellants.

Kelly Frels, Bracewell & Patterson, Houston, for appellee Houston Independent School Dist.

John L. Hill, Atty. Gen., Suzan Cardwell, Asst. Atty. Gen., Austin, for appellees Texas Ed. Agency and State of Tex.

SHANNON, Justice.

This appeal concerns Tex.Educ.Code Ann. § 21.031 (1975), which provides, in part, for a tuition-free public school education for children who are either citizens of the United States or "legally admitted aliens." The issue is whether the enforcement of § 21.-

031 by the school district, as to these appellants, constituted a violation of the due process and equal protection clauses of the Constitutions of the United States and of the State of Texas. Because § 21.031 is constitutional, we will affirm the judgment of the district court of Travis County.

Appellants are several children who live in the Houston Independent School District and who admittedly ". . . are all citizens of Mexico and lack any documentation to support the legality of their presence in the United States . . ." Appellees are Houston Independent School District, the Texas Education Agency, and the State of Texas.

Because the minor appellants were not citizens of the United States or "legally admitted aliens," the school district denied appellants' admission tuition-free. The school district, however, did offer to admit appellants upon a monthly tuition basis.

After they had unsuccessfully exhausted their administrative remedies, appellants filed an administrative appeal in the district court of Travis County. In their trial petition appellants pleaded that they were ". . . undocumented aliens from Mexico." Appellants pleaded further that they ". . . are neither citizens of the United States or legally admitted aliens . . ."

As basis for their suit, appellants pleaded that § 21.031 was unconstitutional and ". . . contrary to the equal protection and due process clauses of the Constitutions of the United States and of the State of Texas, in that they [appellants] are denied free public education solely on the basis of alienage." By way of relief, appellants sought, among other things, an order from the district court requiring appellees to permit all ". . . children between ages 5 and 18, who reside in the School District with a parent or guardian having lawful control of the child, to enroll in a school, free of cost."

Both appellants and appellees filed motions for summary judgment. The court entered judgment affirming the order of the State Board of Education and decreeing that § 21.031 was constitutional.

■ Appellants' important point of error is that § 21.031 is a violation of appellants' right to equal protection under the law. The equal protection clause applies to lawfully admitted aliens, *Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971), but the Supreme Court of the United States has not addressed the issue of whether illegal aliens are afforded the protection of the equal protection clause. *Holley v. Lavine*, 529 F.2d 1294 (2d Cir.), cert. denied, 426 U.S. 954, 96 S.Ct. 3181, 49 L.Ed.2d 1193 (1976). Other cases, however, indicate that the equal protection clause applies, in some circumstances, to aliens whose presence in the United States is illegal. *Bolanos v. Kiley*, 509 F.2d 1023 (2d Cir. 1975), see *Commercial Standard Fire and Marine Co. v. Galindo*, 484 S.W.2d 635 (Tex.Civ.App.1972, writ ref'd n. r. e.). For purposes of this opinion, we will assume that the equal protection clause applies to appellants, as aliens illegally present in the United States. Even making that assumption, we are of the opinion that § 21.031 did not operate to deny equal protection of the laws to appellants. The reasons for our opinion follow.

■ In an equal protection of the law analysis, the reviewing court, of necessity, must recognize the applicable standard of judicial scrutiny. If the questioned statute infringes upon a "fundamental right" or creates an inherently "suspect classification," the statute will be subjected to strict judicial scrutiny. Such scrutiny requires the state to establish a compelling interest in its enactment. To discharge such a burden the state must demonstrate that its purpose or interest is both constitutionally permissible and substantial, and that its use of the classification is necessary to the accomplishment of its purpose. See cases listed in *Norwick v. Nyquist*, 417 F.Supp. 913, 917 (S.D.N.Y.1976).

■ On the other hand, if the statute does not collide with a fundamental right or create a suspect classification, the statute is accorded a presumption of constitutionality. The presumption may not be disturbed un-

less the enactment rests upon grounds wholly irrelevant to the achievement of a legitimate state objective. *Norwick v. Nyquist, supra.*

A tuition-free education is not a "fundamental right" guaranteed by the Constitution of the United States. *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Therefore, the denial of a free education to appellants is not a denial of a "fundamental right" whereby § 21.031 would be subjected to "strict judicial scrutiny."

Classifications based upon alienage *per se* are suspect and are, therefore, subject to strict judicial scrutiny. *Graham v. Richardson, supra. Graham* and like cases, however, have examined only classifications of aliens lawfully residing in the United States. Those cases, then, are not authority for the premise that illegal aliens comprise a suspect classification subject to strict scrutiny. We have found no precedent to that effect.[1]

It is true that classifications based upon unalterable traits as race and lineage are inherently suspect, *Lindsey v. Normet,* 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972), but an examination of § 21.031 shows that its classification is not concerned with race or national origin. Section 21.031 does not deny a tuition-free education to alien children in that the statute specifically provides that children of legally admitted aliens may attend classes free of charge.

The children who are required to pay tuition are those who are residing in this country outside the law. The classification of the statute does not deal with alienage, but instead with a class based upon residence within the United States in violation of the law. It should be observed, also, that the status of an illegal alien is hardly an unalterable or unchangeable one.

No one would argue that the state is constitutionally obligated to provide a tuition-free education to foreign children living abroad. The fact that a child leaves his country and covertly enters the state without complying with the immigration laws, should not somehow create a state responsibility to provide him with a free education. The child should have no greater rights to a free education, due to his unlawful presence, than those rights he would have had if he had not come to this country.

Section 21.031 bears a rational relationship to a legitimate state purpose. Public education is a social and economic function of the states. The Fourteenth Amendment gives the federal government no power to impose upon the states its view of what constitutes wise economic or social policy. *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). The complexity of the problems of financing and managing a statewide public school system suggests there may be more than one constitutionally permissible method of solving them and that within the limits of rationality the legislature's effort to solve those problems should be entitled to re-

1. An amicus curiae brief directs our attention to findings of fact and conclusions of law filed by the United States District Court for the Eastern District of Texas, Tyler division. J. and R. Doe v. James Plyler, Civil Action No. TY–77–261–CA. The findings and conclusions were filed in connection with a temporary injunctive order entered by that court against the officials of the Tyler Independent School District requiring those officials to admit to school tuition-free certain alien children unlawfully residing in the Tyler school district. In conclusion number five the Tyler court was of the opinion that a "heightened scrutiny" as to illegal aliens "is more appropriate." So far as we know there has been no opinion written or published in the cause.

The findings and conclusions by the Tyler court were filed in a proceeding for a temporary injunction. Those findings and conclusions are not even law of the case in the hearing on the merits in that cause. *Berrigan v. Sigler,* 162 U.S.App.D.C. 378, 499 F.2d 514 (1974); *Nader v. Volpe,* 151 U.S.App.D.C. 90, 466 F.2d 261 (1972). Further, even if the findings and conclusions were to be regarded as an opinion of the court, an unreported and unpublished opinion of a United States district court is of questionable precedential value in determining how the Supreme Court of the United States would decide the constitutional issues presented by § 21.031. *State Farm Mut. Auto. Ins. Co. v. Travelers Ind. Co.,* 433 F.2d 311 (10th Cir. 1970).

spect. *San Antonio Independent School District v. Rodriguez, supra.*

 Indisputably, there is limited revenue available for educational purposes. By the enactment of § 21.031 the legislature determined that those funds are to be used to educate citizens and legally admitted aliens who reside in Texas. Section 21.031 does not deprive those who are unlawfully residing in Texas of any bounty to which they are entitled, but instead the law helps insure that those who are citizens and those who are legally admitted will have access to a certain quality of education.

There are perhaps as many as five thousand illegal alien children residing in the Houston school district. The testimony was that it is more expensive to educate such children than other children. In that connection, the evidence was that if the illegal alien children were permitted to attend school tuition-free, the added cost to the Houston school system could be as much as $8,350,000 each year.

If the increased financial burden of providing a tuition-free education for illegal alien children should be placed upon the Houston Independent School District, the revenues to offset the cost could not be obtained without a vote by the school patrons to raise the assessment ratio. In such event, and if the patrons did not vote to increase the assessment ratio, the result would be the reduction of existing services the school system provides for children who are citizens and legally admitted aliens.

 Appellants' other contention is that § 21.031 denies them due process of law. It is true that the Fourteenth Amendment protects all aliens, legal and illegal, from deprivation of life, liberty, or property without due process of law. *Mathews v. Diaz,* 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976). It is equally true that the denial of a tuition-free education is not a denial of life, liberty, or property. The fact that all aliens enjoy the protection of procedural due process does not lead to the further conclusion that all aliens are entitled to enjoy all the substantive rights of citizenship or, indeed, to the conclusion that illegal aliens must be placed in a classification with legally admitted aliens. See *Mathews v. Diaz, supra.*

 In particular, the fact that the state has provided tuition-free education for citizens and legally admitted aliens does not require the state to provide free schooling to aliens residing in the state without the law. "Neither the overnight visitor, the unfriendly agent of a hostile foreign power, the resident diplomat, nor the illegal entrant, can advance even a colorable constitutional claim to a share in the bounty that a conscientious sovereign makes available to its own citizens and *some* of its guests." *Mathews v. Diaz, supra,* at 80, 96 S.Ct. at 1891. The determination to share that bounty, in this instance tuition-free education, may take into account the character of the relationship between the alien and this country.

 Appellants have other points of error attacking § 21.031 on other constitutional grounds. Those points of error will not be considered since the grounds for those points were not pleaded and were thereby waived. It is settled that a litigant by his act, or omission, may waive constitutional rights. *Michel v. State of Louisiana,* 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. 83 (1955); *Yakus v. United States,* 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944).

The judgment is affirmed.