**HL FARM CORPORATION, Appellant,**

v.

**Jackie SELF, Chief Appraiser—Kaufman County Single Appraisal District, Bill McFarland, Ollie Stark, and Rex Manning, Individually and as the Kaufman County Appraisal Review Board, Doris Dunn, Tax–Assessor–Collector—Kaufman County, Jean Betts, Tax Collector, Kemp Independent School District, County of Kaufman, Texas, and the State of Texas, Appellees.**

No. 05–90–01390–CV.

Court of Appeals of Texas, Dallas.

Oct. 18, 1991.

Harold R. McKeever, Kevin J. Cook, Dallas, for appellant.

Gil J. Alton Jr., Kaufman, Bill Kimbrough, Austin, for appellees.

Before ENOCH, C.J., and BAKER and LAGARDE, JJ.

## OPINION ON MOTION FOR REHEARING

LAGARDE, Justice.

Appellant's motion for rehearing is denied. On our own motion, we withdraw our opinion of August 28, 1991. The following is now our opinion.

HL Farm appeals from a summary judgment rendered in favor of appellees (collectively referred to as the appraisal unit) in its suit contesting the denial of its open-

space land application. In three points of error, HL Farm argues that section 23.-56(3) of the Texas Tax Code is unconstitutional in that it violates: (1) the language, policy, and purpose of article VIII, section 1-d-1 of the Texas Constitution; (2) the requirement of equal and uniform taxation under article VIII, section 1 of the Texas Constitution; and (3) the equal protection clauses of the United States and Texas Constitutions. We overrule HL Farm's points and, accordingly, affirm the trial court's judgment.

 Both HL Farm and the appraisal unit filed motions for summary judgment. HL Farm attacks both the granting of the appraisal unit's motion and the denial of its own motion. An order denying a motion for summary judgment is not appealable except, as here, when both parties have filed motions for summary judgment and the trial court has granted one motion and overruled the other. *Garcia v. City of Lubbock*, 634 S.W.2d 776, 780 (Tex.App.—Amarillo 1982, writ ref'd n.r.e.). A movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). When both parties move for summary judgment, each must carry its own burden and neither party can prevail because of the failure of the other party to discharge its burden. *Villarreal v. Laredo Nat'l Bank*, 677 S.W.2d 600, 605 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.).

HL Farm is a Virginia corporation, registered to do business in Texas. HL Farm is a wholly owned subsidiary of Liebherr–America, Inc., also a Virginia corporation. Liebherr–America, Inc. is wholly owned by Liebherr International, AG, a Switzerland corporation, which is neither a citizen nor a resident of the United States. Pursuant to the Foreign Investment Disclosure Act, HL Farm is required to register its ownership and acquisition of land with the United States Secretary of Agriculture. 7 U.S.C.A. § 3501 (West 1988).

HL Farm owns land in Kaufman County, Texas. The Kaufman County appraisal unit denied HL Farm the open-space land designation, which would have reduced the taxes on the property. The only reason for the denial was section 23.56(3) of the Tax Code, which denies the favorable qualification to land owned by a corporation required by federal law to register its ownership of the land and a majority interest of the corporation is owned by a non-resident alien.[1] Tex.Tax Code Ann. § 23.56(3) (Vernon 1982).

## CONSTITUTIONAL CHALLENGES

### Article VIII, Section 1-d-1 of the Texas Constitution

 Article VIII, section 1-d-1 of the Texas Constitution provides:

(a) To promote the preservation of open-space land, the legislature shall provide by general law for taxation of open-space land devoted to farm or ranch purposes on the basis of its productive capacity.... The legislature by general law may provide eligibility limitations under this section and may impose sanctions in furtherance of the taxation policy of this section.

Tex. Const. art. VIII, § 1-d-1(a). Pursuant to this constitutional provision, the legislature enacted statutes concerning the appraisal of agricultural land that affords favorable taxation for property qualifying as open-space land. Tex.Tax Code Ann. §§ 23.51–.57 (Vernon 1982 & Supp.1991). The legislature also imposed eligibility limitations on the entitlement to the open-space land qualification. HL Farm attacks the foreign person eligibility limitation. Tex. Tax Code Ann. § 23.56(3) (Vernon 1982).

1. The Foreign Investment Disclosure Act requires all foreign persons to register their acquisition and ownership of land in the United States. The Act defines foreign person to include a corporation organized under the laws of any state in which, as determined by the Secretary of Agriculture, a substantial control is directly or indirectly held by a corporation organized under the laws of a foreign government. 7 U.S.C.A. § 3508(3)(C) (West 1988). HL Farm is a foreign person as defined by this Act.

HL Farm contends that section 23.56(3) contravenes the purpose behind the above constitutional provision, which it defines as the preservation of Texas farm land. However, the courts of this state have more narrowly defined the purpose of section 1-d-1 to be to preserve and benefit the family farm. *Gragg v. Cayuga Indep. School Dist.*, 539 S.W.2d 861, 865 (Tex.), *appeal dism'd*, 429 U.S. 973, 97 S.Ct. 478, 50 L.Ed.2d 581 (1976); *Alexander Ranch, Inc. v. Central Appraisal Dist.*, 733 S.W.2d 303, 307 (Tex.App.—Eastland 1987, writ ref'd n.r.e.), *cert. denied*, 486 U.S. 1026, 108 S.Ct. 2005, 100 L.Ed.2d 236 (1988). The eligibility limitation excluding non-resident aliens from qualifying for the open-space land designation furthers section 1-d-1's goal of preserving and benefiting the family farm.

We disagree with HL Farm's contention that section 1-d-1 allows the legislature to enact eligibility limitations regarding only the use of the land and not the ownership of the land. Without placing eligibility limitations on ownership, in addition to limitations on the use of the land, the legislature could not fulfill section 1-d-1's purpose of preserving and benefiting the family farm. Accordingly, we overrule HL Farm's first point.

### Equal Protection Clauses of the United States and Texas Constitutions

In its third point, HL Farm contends that section 23.56(3) denies it equal protection of the laws. The appraisal unit counters that HL Farm, as a non-resident alien, is not entitled to equal protection of the laws. We disagree with the appraisal unit's contention.

■ The United States Supreme Court has held that non-resident aliens who are within the territory of this country are entitled to equal protection of the laws.

*United States v. Verdugo–Urquidez*, 494 U.S. 259, 110 S.Ct. 1056, 1064, 108 L.Ed.2d 222 (1990); *Plyler v. Doe*, 457 U.S. 202, 212, 102 S.Ct. 2382, 2392, 72 L.Ed.2d 786 (1982). We conclude that HL Farm is entitled to equal protection of the laws for two reasons. First, HL Farm, the party to this lawsuit, is a person within the meaning of the equal protection clause. *Bethlehem Motors Corp. v. Flynt*, 256 U.S. 421, 424, 41 S.Ct. 571, 572, 65 L.Ed. 1029 (1921) (foreign corporation doing business in a state is a person within the meaning of the Fourteenth Amendment). Although HL Farm is a foreign person under the federal act, HL Farm is not a non-resident alien. Second, even if we look to the ultimate ownership of HL Farm to determine its residency, we conclude that Liebherr International, AG, through its ownership of HL Farm, a Virginia corporation licensed to do business in Texas, is within the territory of the United States and the state of Texas, thus entitling Liebherr International, AG to the constitutional guarantee of equal protection of the laws.

■ Having determined that HL Farm is entitled to the constitutional guarantee of equal protection of the laws, we must now determine whether section 23.56(3) denies HL Farm this constitutional right. At the outset, we note that the Eastland Court of Appeals has decided this same question against HL Farm. *Alexander Ranch*, 733 S.W.2d at 307.[2] States have much discretion in laying taxes, and they may use classifications in assessing taxes so long as a rational basis supports the classification. *Allied Stores of Ohio, Inc. v. Bowers*, 358 U.S. 522, 526–27, 79 S.Ct. 437, 440–41, 3 L.Ed.2d 480 (1959). A classification for tax purposes does not result in the denial of equal protection if it rests upon some ground of difference having a fair and sub-

---

**2.** HL Farm did not cite this case in its brief. Nevertheless, at oral argument its attorney admitted knowledge that the case was directly contrary to HL Farm's position. In response to questions by the Court, he simply responded that he did not bring the case to the Court's attention because he thought the case was wrong. Although the appraisal unit, as appellee, cited *Alexander Ranch* in its brief, we do not condone the action of HL Farm's attorney of knowingly ignoring contrary authority that is directly on point. *See* SUPREME COURT OF TEXAS, STATE BAR RULES art. X, § 9 (Texas Disciplinary Rules of Professional Conduct) Rule 3.03(a)(4) (1989).

stantial relation to the object of the legislation. *Id.* at 527, 79 S.Ct. at 440.

■ HL Farm contends that there is no rational basis for denying it the open-space land designation because it is a foreign person. The legislative history of the Agricultural Foreign Investment Disclosure Act of 1978 reveals the following concerns that prompted its enactment:

1. Price of farmland escalates, which forces property taxes up.

2. Prospective farmers are less able to purchase farmland, and existing farmers are less able to expand or consolidate their holdings.

3. Land ownership by farmers may be supplanted by leasing from foreign investors, threatening the traditional owner-operator pattern of our family farm system.

4. Farm income leaves the country.

5. Foreign owners may have little incentive to participate in conservation programs.

6. Foreign owners are more likely to sell out to the developers of housing projects, shopping centers, and industrial parks.

7. Less capital will be available to local banks to assist area farmers.

H.R.Rep. No. 1570, 95th Cong., 2nd Sess. 7–21, *reprinted in* 1978 U.S. Code Cong. & Admin.News 2914, 2916–30. These same concerns equally threaten agricultural land and family farmers in Texas. We hold that these policy considerations provide a rational basis to support section 23.56(3), which is fairly and substantially related to the object of the legislation: the preservation of the family farm; therefore, HL Farm has not been denied equal protection of the laws.[3] Accordingly, we overrule HL Farm's third point.

### Article VIII, Section 1 of the Texas Constitution

■ In its second point, HL Farm contends that section 23.56(3) violates article VIII, section 1(a) of the Texas Constitution, which states that "[t]axation shall be equal and uniform." Tex. Const. art. VIII, § 1(a). However, by looking at section 1(b) of article VIII, it becomes evident that the constitution does not require absolute equality in taxation. Section 1(b) provides:

> (b) All real property and tangible personal property in this State, unless exempt as required or permitted by this Constitution, whether owned by natural persons or corporations, other than municipal, *shall be taxed in proportion to its value, which shall be ascertained as may be provided by law.*

Tex. Const. art. VIII, § 1(b) (emphasis added). HL Farm's land was taxed in proportion to its value as determined under the Tax Code. Tex.Tax Code Ann. § 23.56(3) (Vernon 1982). In disposing of HL Farm's first and third points, we concluded that a rational basis exists for assessing the value of agricultural land owned by non-resident aliens differently; thus, we upheld the constitutionality of section 23.56(3).

Since a rational basis supports the statute that values HL Farm's land differently because it is required, under federal law, to register its ownership of the land and it is owned by a non-resident alien, we hold that section 23.56(3) does not violate article VIII, section 1 of the Texas Constitution. Accordingly, we overrule HL Farm's second point.

The trial court's judgment is affirmed.

ENOCH, Chief Justice, dissenting.

Preservation of the "family farm" is not the purpose of article VIII, section 1–d–1 of the Texas Constitution. Contrary to the assertion of the majority, *Gragg* states:

> The provision also has the salutary purpose of encouraging not only that *agricultural and ranch land be continued in production* but that farmers and ranchers *remain in the business of such production.*[1]

---

3. We note that some states forbid altogether non-resident aliens from acquiring agricultural land within their boundaries. *See, e.g.,* Iowa Code Ann. §§ 567.1–11 (West Supp.1991); Minn.

Stat.Ann. § 500.221 (West 1990); Okla.Stat.Ann. tit. 60, §§ 121–127 (West 1971).

1. *Gragg v. Cayuga Indep. School Dist.,* 539 S.W.2d 861, 865 (Tex.), *appeal dism'd,* 429 U.S.

Moreover, section 23.56 of the Texas Tax Code does not deny the tax benefits of agricultural use to *domestic corporations*.[2] It is agricultural production—the business of farming and ranching, that is encouraged, not family ownership. The failure of the majority to recognize the true purposes of article VIII 1–d–1 produces the anomalous result of forcing foreign-owned corporations, who are in fact *not prohibited* from buying Texas land, to cease lower yield agricultural production in favor of higher yield commercial development.

I agree with the majority that HL Farm is entitled to equal protection of the law. I also agree that the State is entitled to substantial deference in making classifications. "The Equal Protection Clause does not demand a surveyor's precision in fashioning classifications."[3] However, I disagree with the majority's conclusion that there is a rational basis for denying HL Farm the open-space land designation. I find no rational basis.

"The State must proceed upon a rational basis and may not resort to a classification that is palpably arbitrary."[4] Indeed, it must rest upon some ground of difference that has a fair and substantial relation to the object of the legislation.[5] In determining whether the classification for HL Farm is permissible, two questions must be answered: (1) Does the challenged legislation have a legitimate purpose; and (2) was it reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose?[6]

The State advances thirteen reasons why its classification is permitted:

(1) prices of farmland are forced upward;

(2) property taxes are forced up;

(3) prospective farmers are less able to purchase farmland;

(4) existing farmers are less able to expand or consolidate their holdings;

(5) land ownership by farmers may be supplanted by leasing from distant investors, threatening the traditional owner-operator pattern of our family farm system;

(6) increase in absentee land ownership may contribute to the concentration of farm operations in the hands of a few;

(7) farm income leaves the country;

(8) local businesses are bypassed in the purchase of supplies, machinery, and equipment;

(9) foreign owners may have little incentive to participate in conservation programs;

(10) foreign owners are more likely to sell out to the developers of housing projects, shopping centers, and industrial parks;

(11) foreign ownership interferes with the transfer of farms from parents to offspring;

(12) foreign ownership separates the interests of landowners from that of the actual land operators; and

(13) less capital will be available to local banks to assist area farmers and businessmen.

Certainly, the preservation of agricultural production and the business of farming and ranching are legitimate purposes. The real question is whether it was reasonable for the Texas legislature to believe that use of the classification would *promote* these purposes. Here, the legislature has crossed that "point beyond which the state cannot go without violating the Equal Protection Clause."[7]

973, 97 S.Ct. 478, 50 L.Ed.2d 581 (1976) (emphasis added).

**2.** Tex.Tax Code Ann. § 23.56 (Vernon 1982).

**3.** *Metropolitan Life Ins. Co. v. Ward,* 470 U.S. 869, 898, 105 S.Ct. 1676, 1692, 84 L.Ed.2d 751 (1985).

**4.** *Allied Stores of Ohio, Inc. v. Bowers,* 358 U.S. 522, 527, 79 S.Ct. 437, 441, 3 L.Ed.2d 480 (1959).

**5.** *Allied Stores,* 358 U.S. at 527, 79 S.Ct. at 441.

**6.** *Western & S. Life Ins. Co. v. State Bd. of Equalization,* 451 U.S. 648, 668, 101 S.Ct. 2070, 20, 68 L.Ed.2d 514 (1981).

**7.** *Id.*

I am at a total loss to understand how the fact that foreign-owned corporations are a part of the buying public contributes any greater pressure for the upward movement of land prices. Regardless, I noted at the outset that foreigners are not prohibited from buying. Likewise, the dangers of absentee land ownership advanced by the State are not rationally related to the classification. There is no distinction between the absentee ownership of a New York corporation which is registered to do business in Texas and HL Farm, a Virginia corporation registered to do business in Texas. The dangers of absentee ownership apply equally to *all* corporate landowners. Finally, I dare say that unless circumstances are quite unusual, market factors drive the decision on whether to sell the land, not the country where the owner happens to live. To be sure, the legislature recognizes that a tax break for agricultural use is a market factor.

As for local purchase of supplies, machinery, etc., the land isn't going anywhere. If the land is going to be farmed, it must be farmed here. Consequently, most if not all of the operating and capital costs will be incurred here and paid here. Which brings me back to my original point. The purpose of the open-space designation is to encourage *agricultural production* and to keep farmers and ranchers in *the business.* Foreigners are allowed to buy Texas land. They, like all other owners of open land, should be discouraged from commercially developing the open space and encouraged to continue agricultural production. The statute in question has the opposite effect. The State has presented no rational basis for the denial of the open-space designation to HL Farm.

There is another point which I think is critical, but which was not addressed by the parties. The fair and substantial relationship of the classification to the legislative object is further undermined by its application to a corporation registered to do business in Texas because the Texas Business Corporation Act provides that "[a] foreign corporation which shall have received

a certificate of authority under this Act *shall, ... enjoy the same ... rights and privileges as a domestic corporation....*[8] *State v. Hillcrest Inv., Ltd.,* 630 P.2d 1253 (Okla.1981), is instructive. In *Hillcrest,* the Oklahoma Supreme Court determined that Hillcrest, a Canadian corporation, was a resident of Oklahoma. An Oklahoma statute provided that non-resident aliens could not own land located within an incorporated town or city. However, another statute provided that a foreign corporation licensed to do business in Oklahoma was a domesticated corporation. By statute, domesticated corporations were entitled to the same rights and privileges as domestic corporations. Therefore, the Court reasoned that because Hillcrest was licensed to do business in Oklahoma, it could own land within an incorporated town or city.

I would hold section 23.56(3) of the Texas Tax Code unconstitutional under both the Fourteenth Amendment of the United States Constitution and article VIII, section 1–d–1 of the Texas Constitution as applied to HL Farm. Therefore, I respectfully dissent.

**8.** Tex.Bus.Corp.Act Ann. art. 8.02 (Vernon Supp. 1991) (emphasis added).