**G.N.B., INC., Appellant,**

v.

**COLLIN COUNTY APPRAISAL DISTRICT, Appellee.**

**No. 05–92–01419–CV.**

Court of Appeals of Texas, Dallas.

August 6, 1993.

Rehearing Denied Sept. 28, 1993.

**54**

G. Walter McCool, Austin, for appellant.

Russell R. Graham and Judith A. Knies, Austin, for appellee.

Before LAGARDE, BURNETT and WHITTINGTON, JJ.

### OPINION

LAGARDE, Justice.

GNB, Inc. appeals from a judgment in which the trial court upheld an order, originally made by the Collin County Appraisal District and affirmed by an appraisal review board, denying GNB's application for appraisal of certain property in Collin County as open-space land. GNB asserts in six points of error that the trial court erred by rendering judgment in favor of appellee because section 23.56(3) of the tax code [1], which disqualifies certain property for appraisal as open-space land, (1) does not apply to its

---

1. Tex.Tax Code Ann. § 23.56(3) (Vernon 1992).

property; (2) violates article I, section 3a; (3) article VIII, section 1–d–1 and (4) article VIII, section 1 of the Texas Constitution; and violates its rights to (5) due process; and (6) equal protection as guaranteed by the Texas and United States Constitutions. For the reasons that follow, we overrule these points and affirm the trial court's judgment.

## SECTION 23.56(3) OF THE TEXAS TAX CODE

This appeal hinges upon the meaning and constitutionality of section 23.56(3) of the tax code. Section 23.56(3) makes land ineligible for appraisal as open-space land if:

> the land is owned by a corporation, partnership, trust, or other legal entity if the entity is required by federal law or by rule adopted pursuant to federal law to register its ownership or acquisition of that land *and* a nonresident alien or a foreign government or any combination of nonresident aliens and foreign governments own a majority interest in the entity.

Tex. Tax Code Ann. § 23.56(3) (Vernon 1992) (emphasis added). An open-space land designation is favorable because open-space land is taxed according to its productive capacity rather than its value. *Compare* Tex. Const. art. VIII, § 1–d–1 *with* Tex. Const. art. VIII, § 1(b).

## STIPULATED FACTS

This case was tried before the district court on the following stipulated facts: GNB is a Delaware corporation entirely owned by another Delaware corporation, Pacific Dunlop GNB Corporation. A third Delaware corporation, Pacific Dunlop Holdings, Inc., owns more than seventy-five percent of Pacific Dunlop GNB Corporation. Pacific Dunlop Holdings, Inc., is in turn entirely owned by Pacific Dunlop, Ltd., an Australian corporation. At least fifty percent of Pacific Dunlop, Ltd.'s shareholders are nonresident aliens. Because nonresident aliens indirectly own a significant interest in GNB, federal law requires GNB to register its ownership of land in Collin County. *See* 7 U.S.C. § 3508(3)(C)(ii) (1988).

GNB owned certain land in Collin County on January 1, 1990. For tax year 1990, GNB timely filed an application for appraisal of the property as qualified open-space land under chapter 23, subchapter D of the tax code. The appraisal district denied the application based solely on its determination that the property was ineligible under section 23.-56(3). GNB appealed to the appraisal review board which upheld the district's order. Pursuant to section 42.01(1)[2] of the tax code, GNB timely filed a petition with the district court for review of the appraisal review board's order. The district court upheld the denial of GNB's application.

## APPLICABILITY OF SECTION 23.56(3)

■ In its first point of error, GNB asserts that the trial court erred by rendering judgment for the appraisal district because section 23.56(3) does not make its property ineligible for appraisal as open-space land. Property is ineligible for appraisal as open-space land if (1) it is owned by a legal entity required by federal law to register its ownership or acquisition of the property and (2) a nonresident alien or foreign government or any combination thereof owns a majority interest in the entity. *See* Tex.Tax Code Ann. § 23.56(3) (Vernon 1992).

■ GNB stipulated at trial that it meets the first part of the test. However, GNB insists that it is not an entity owned in majority part by a nonresident alien or foreign government or combination thereof. GNB would have us read section 23.56(3) narrowly: it argues that the Texas Legislature was concerned only with *direct* ownership of property by nonresident aliens, not *indirect* ownership. GNB bases this argument on the language of the federal Agricultural Foreign Investment Disclosure Act, which requires entities in which "a significant interest or substantial control is directly or indirectly held" by nonresident aliens or foreign governments to register ownership of property. Because section 23.56(3) refers to this federal law, GNB asserts that the Texas Legislature was aware of the federal definition of ownership, could have followed it, but chose not to do so. Instead, GNB argues,

**2.** Tex.Tax Code Ann. § 42.01(1) (Vernon 1992).

the legislature opted to limit ineligibility to entities *directly* owned by nonresident aliens and foreign governments.

The appraisal district responds that the statutory construction urged by GNB would render the statute ineffective because its restrictions could be avoided by nonresident aliens that undertake the negligible trouble and expense of forming a domestic corporation to directly own property. The appraisal district also argues that this court's decision in *H.L. Farm Corp. v. Self*, 820 S.W.2d 372 (Tex.App.—Dallas 1991, writ granted), forecloses GNB's narrow interpretation of section 23.56(3).

In response to the latter argument, we do not view our decision in *H.L. Farm Corp.* as dispositive of this issue. The issue of whether "own" as used in section 23.56(3) encompasses direct and indirect ownership was neither raised nor discussed in that decision. For that reason we do not consider *H.L. Farm Corp.* as controlling on this point, although it involved indirect ownership of land by a foreign corporation and all parties to the suit apparently assumed that section 23.56(3) applied to indirect ownership of land.

 In the absence of any other authority on this matter, we will rely on established rules of statutory construction to resolve this issue. When construing a statute, we must consider the consequences that follow from a particular construction and avoid a construction which would produce an absurd result. *Sharp v. House of Lloyd, Inc.*, 815 S.W.2d 245, 249 (Tex.1991). Furthermore, we must presume that the legislature intended the entire statute to be effective. TEX. GOV'T CODE ANN. § 311.021(2) (Vernon 1988).

If we were to interpret section 23.56(3) as GNB suggests, entities owned by nonresident aliens could gain favorable tax treatment merely by creating a domestic shell corporation. Although we stop short of calling such a result absurd, it would frustrate the apparent purpose of section 23.56(3), *i.e.*, preventing corporations owned in majority part by nonresident aliens from seeking favorable tax breaks. Accordingly, we hold that the term "own" as used in section 23.-56(3) includes indirect ownership. We overrule GNB's first point.

## CONSTITUTIONALITY OF SECTION 23.56(3)

Having held that section 23.56(3) disqualifies GNB's land for appraisal as open-space land, we now address GNB's multifaceted attack upon the constitutionality of the statute.

### A. Texas Equal Rights Amendment

In its second point of error, GNB asserts that section 23.56(3) is unconstitutional because it violates the Equal Rights Amendment to the Texas Constitution. This amendment states: "Equality under the law shall not be denied or abridged because of sex, race, color, creed, or national origin. This amendment is self-operative." TEX. CONST. art. I, § 3a. GNB argues that section 23.56(3) denies it equality under the law based on national origin and is, therefore, unconstitutional.

 The Supreme Court of Texas has outlined a three-step process to determine whether a violation of the Equal Rights Amendment has occurred. Initially, we must determine if there has been discrimination "under the law." *See In re McLean*, 725 S.W.2d 696, 697 (Tex.1987). The next inquiry is whether equality was denied "*because of* a person's membership in a protected class of sex, race, color, creed, or national origin." *Id.* (emphasis added). Finally, if the first two prongs are met, we must decide whether the discrimination in question is prohibited by the Equal Rights Amendment. *Id.*

 In determining whether this third prong of the test has been met, we are mindful that the Equal Rights Amendment provides greater protection than the equal protection and due process guarantees of the United States and Texas Constitutions. *McLean*, 725 S.W.2d at 698. Under the amendment, strict judicial scrutiny applies to all classifications involving sex, race, color, creed or national origin. *See Lucas v. United States*, 757 S.W.2d 687, 705 n. 1 (Tex.1988) (Phillips, C.J., dissenting); *see also McLean*, 725 S.W.2d at 698. We may uphold a statute which discriminates against one of these pro-

tected classifications only if its proponent can prove there is no other manner to protect the compelling state interest served by the statute. *See McLean*, 725 S.W.2d at 698.

■ Concerning the first step in the inquiry, any discrimination which may have occurred was clearly "under the law" because it was required by state statute. *See id.* at 697. The appraisal district responds, however, that section 23.56(3) does not deny favorable tax appraisals based on national origin or any other enumerated class, but instead discriminates on the basis of residency and citizenship; consequently, the Equal Rights Amendment is inapplicable. Our analysis of federal and Texas case law indicates that this distinction is correct. For instance, the Supreme Court has defined national origin as the country where a person is born, or, more broadly, the country from which a person's ancestors come. *See Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 91, 94 S.Ct. 334, 338, 38 L.Ed.2d 287 (1973). On the other hand, an alien is a "foreign born person who has not qualified as a citizen of the country." BLACK'S LAW DICTIONARY 71 (6th ed. 1990).

Courts have consistently held that discrimination against aliens is distinguishable from discrimination on the basis of national origin. For instance, the Supreme Court has held that the Civil Rights Act of 1964, which prohibits discrimination in hiring based on an individual's "race, color, religion, sex, or national origin" [3], is inapplicable to discrimination against non-citizens. *See Espinoza*, 414 U.S. at 91, 94 S.Ct. at 338; *see also Bhandari v. First Nat'l Bank of Commerce*, 808 F.2d 1082, 1101 (5th Cir.1987) (holding that the Equal Employment Opportunity Act, which prohibits discrimination against credit applicants on the basis of national origin, does not outlaw discrimination on the basis of alienage). Furthermore, the Austin Court of Appeals has stated that a statute which provides free public education to United States citizens or "legally admitted aliens" does not discriminate on the basis of national origin. *See Hernandez v. Houston Indep. Sch. Dist.*, 558 S.W.2d 121, 124 (Tex.Civ.App.—Austin 1977, writ ref'd n.r.e.). Because section 23.56(3) does not deny equality on the basis of national origin or any other class listed in the Equal Rights Amendment, we conclude that the statute does not discriminate on a basis forbidden by that amendment. Accordingly, we overrule GNB's second point of error.

## B. Article VIII, Section 1–d–1 of the Texas Constitution

■ In its third point of error, GNB asserts that section 23.56(3) violates article VIII, section 1–d–1 of the Texas Constitution. Section 1–d–1(a) provides:

> To promote the preservation of open-space land, the legislature shall provide by general law for taxation of open-space land devoted to farm or ranch purposes on the basis of its productive capacity.... *The legislature by general law may provide eligibility limitations under this section* and may impose sanctions in furtherance of the taxation policy of this section.

TEX. CONST. art. VIII, § 1–d–1(a) (emphasis added). It was pursuant to this constitutional provision that the legislature created differential tax treatment for certain owners of open-space land [4] by enacting sections 23.51–.57. *See H.L. Farm Corp.*, 820 S.W.2d at 374.

GNB argues that the eligibility limitations in section 23.56(3) exceed the scope of the authority granted to the legislature by the constitution. According to GNB, the legislature had authority only to limit eligibility based on use of the land, not based on ownership of the land. However, this court has previously rejected this same argument. *See id.* at 375. In doing so, we reasoned that the legislature could not fulfill section 1–d–1's purpose of preserving and benefiting the family farm without the ability to place limi-

---

3. *See* 42 U.S.C. § 2000e–2(a)(1) (1981).

4. Qualified open-space land is "land that is currently devoted principally to agricultural use to the degree of intensity generally accepted in the area and that has been devoted principally to agricultural use or to production of timber or forest products for five of the preceding seven years or land that is used principally as an ecological laboratory by a public or private college or university." TEX.TAX CODE ANN. § 23.51(1) (Vernon 1992).

tations on ownership as well as use of land. *Id.*

Finally, GNB argues that because the legislature deleted language in an early draft of section 1–d–1 which made aliens ineligible for open-space land designation, any subsequent eligibility limitation imposed against aliens was contrary to the intent of the drafters. We do not find this reasoning persuasive. The language could have been deleted for any number of reasons. For instance, the legislature might have preferred that the eligibility limitations be established as a matter of statutory, not constitutional, law to allow the limitations to be more readily amended. Or perhaps the supporters of section 1–d–1 could not muster the political support necessary to impose a constitutional eligibility exclusion against corporations owned by nonresident aliens. In light of these reasonable possibilities and the plain language of section 1–d–1, we decline to adopt GNB's interpretation of the meaning behind the deletion from the first draft. We overrule GNB's third point of error.

## C. Article VIII, Section 1(a) of the Texas Constitution

In its fourth point of error, GNB asserts that section 23.56(3) violates the constitutional requirement that "[t]axation shall be equal and uniform." *See* TEX. CONST. art. VIII, § 1(a). It is clear, however, that the constitution does not require absolute equality in taxation. *Compare* TEX. CONST. art. VIII, § 1(b) (providing that all property, except as otherwise required or permitted by the constitution, shall be taxed in proportion to its value) *with* TEX. CONST. art. VIII, § 1–d(a) (providing that all land designated for agricultural use and owned by natural persons shall be assessed for all tax purposes "on the consideration of only those factors relative to such agricultural use.").

A classification in a tax law which creates disparate tax consequences meets the requirements of article III, section 1(a) if there is a rational basis for the classification. *See H.L. Farm Corp.*, 820 S.W.2d at 376. This court has previously determined that there is a rational basis for the eligibility limitations in section 23.56(3): the legisla-

ture's desire to preserve and benefit the family farm. *Id.* Accordingly, we overrule GNB's fourth point of error.

## D. Due Process

In its fifth point of error, GNB argues that its right to a favorable tax appraisal is a species of "property" which cannot be taken without due process of law. It further argues that discrimination in taxation itself constitutes a taking of property without due process. GNB reasons that section 23.56(3) deprives it of its right to appraisal of its property as open-space land; consequently, its property was taken without due process. Thus, it argues, section 23.56(3) is unconstitutional. We construe GNB's complaint to be one of deprivation of federal due process. It is unclear, however, whether GNB is claiming that section 23.56(3) violates its procedural or substantive due process rights.

To the extent that GNB raises a procedural due process claim, we conclude that GNB received procedural due process. In matters of taxation, due process requirements are satisfied if the party complaining of the tax is given an opportunity to be heard by some assessment board at some stage in the proceedings before valuation is finally determined. *Dallas County Appraisal Dist. v. Lal*, 701 S.W.2d 44, 47 (Tex.App.—Dallas 1985, writ ref'd n.r.e.); *see also Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434, 102 S.Ct. 1148, 1157, 71 L.Ed.2d 265 (1982). The tax code permitted GNB to seek review from the appraisal review board and, subsequently, appeal that decision to the district court and beyond. Under these circumstances, section 23.56(3) affords procedural due process and GNB took full advantage of that process. *See Graham v. Hutchinson County Appraisal Review Bd.*, 776 S.W.2d 592, 594 (Tex.App.—Amarillo 1988, writ denied).

To the extent that GNB may be claiming that section 23.56(3) violates its substantive due process rights, this claim lacks merit as well. When a tax law is challenged on substantive due process grounds, the law must be upheld if there is a reasonable basis for the classification. *See Bullock v. ABC*

*Interstate Theatres, Inc.,* 557 S.W.2d 337, 341 (Tex.Civ.App.—Austin 1977, writ ref'd n.r.e.), *cert. denied,* 439 U.S. 894, 99 S.Ct. 253, 58 L.Ed.2d 240 (1978). Having already held that there is a reasonable basis for the classification in section 23.56(3), we overrule GNB's fifth point of error.

### E. Equal Protection

 In its sixth point of error, GNB contends that section 23.56(3) violates the equal protection provisions of the state and federal constitutions.[5] *See* U.S. CONST. amend. XIV; TEX. CONST. art. I, § 3. GNB concedes that the proper standard of review for its equal protection claim, as distinguished from the Equal Rights Amendment claim discussed previously, is whether section 23.56(3) is rationally related to a legitimate governmental purpose. *See H.L. Farm Corp.,* 820 S.W.2d at 376. We have already held that the eligibility limitation in section 23.56(3) is rationally related to a legitimate government purpose: preserving and benefiting the family farm. *Id.* Accordingly, we overrule GNB's sixth point of error.

We affirm the trial court's judgment.

WHITTINGTON, J., concurs in part and dissents in part and files opinion.

WHITTINGTON, Justice, concurring and dissenting.

I concur with the majority concerning the issues of indirect ownership, the Texas Equal Rights Amendment, equal and uniform taxation, and due process. Because I conclude that section 23.56(3) of the Texas Tax Code[1] conflicts with article VIII, section 1–d–1 of the state constitution and violates the Equal Protection Clauses of the federal and state constitutions, however, I respectfully dissent.

In GNB's third point of error, it contends that section 23.56(3) of the tax code is unconstitutional because it conflicts with article VIII, section 1–d–1 of the Texas Constitution.

When addressing the constitutionality of section 23.56(3), the majority relies on *HL Farm Corp. v. Self,* 820 S.W.2d 372 (Tex. App.—Dallas 1991, writ granted). *HL Farm* relies on two cases to support its holding that section 23.56(3) is constitutional. The cases are *Gragg v. Cayuga Independent School District,* 539 S.W.2d 861 (Tex.), *appeal dismissed,* 429 U.S. 973, 97 S.Ct. 478, 50 L.Ed.2d 581 (1976) and *Alexander Ranch, Inc. v. Central Appraisal District,* 733 S.W.2d 303 (Tex.App.—Eastland 1987, writ ref'd n.r.e.), *cert. denied,* 486 U.S. 1026, 108 S.Ct. 2005, 100 L.Ed.2d 236 (1988). *Gragg* addresses section 1–d of the constitution, not section 1–d–1. In fact *Gragg* was decided in 1976, some two and one-half years before section 1–d–1 became effective in 1979. In a footnote, the *Gragg* court observed that the Texas Legislative Council had published an analysis of section 1–d before its adoption. The analysis stated that section 1–d was designed to help keep farmers and ranchers whose land is both a home and a means of livelihood from being driven away by increasing tax burdens. The analysis also found preservation of the family farm to be an argument in favor of section 1–d. *See Gragg,* 539 S.W.2d at 864–65 n. 2. But this does not change the fact that *Gragg* does not interpret section 1–d–1 at all. *Alexander Ranch's* interpretation of section 1–d–1 relies on *Gragg* and *San Marcos Consolidated Independent School District v. Nance,* 495 S.W.2d 335 (Tex.App.—Austin), *writ ref'd per curiam,* 502 S.W.2d 694 (Tex.1973). *See Alexander Ranch,* 733 S.W.2d at 307. *San Marcos* also only addresses section 1–d. *See San Marcos,* 495 S.W.2d at 337. Hence, the authorities used to support the holdings in *HL Farm* and *Alexander Ranch* do not speak at all to the meaning of section 1–d–1.

It is our duty in construing the constitution to ascertain and give effect to the plain intent

---

**5.** Despite its status as a corporation indirectly owned by nonresident aliens, GNB is entitled to equal protection of the laws for two reasons. First, GNB is a domestic corporation. Second, even if we look to the ultimate ownership of GNB to determine its residency, we conclude that Pacific Dunlop, Ltd., through its ownership of GNB, a Delaware corporation, is within the territory of the United States and thereby entitled to equal protection of the laws. *See H.L. Farm Corp. v. Self,* 820 S.W.2d 372, 375 (Tex.App.—Dallas 1991, writ granted).

**1.** TEX.TAX CODE ANN. § 23.56(3) (Vernon 1992).

and language of a constitutional amendment. *Gragg* 539 S.W.2d at 865–66 (citing *Deason v. Orange County Water Control & Improvement Dist., No. 1,* 151 Tex. 29, 35, 244 S.W.2d 981, 984 (1952)). The purpose of section 1–d–1 is clearly stated in its first sentence, which begins: "To promote the preservation of open-space land...." The majority, however, construes this sentence to mean that the purpose of section 1–d–1 is to promote the preservation of the family farm. This error in construction is apparently based upon reliance on *Gragg* and later language in section 1–d–1 that gives effect to the purpose of preserving open-space land by providing for favorable taxation of open-space land devoted to farm or ranch purposes. The majority's interpretation has recently been refuted by the Texas Supreme Court, which stated:

> The Texas Constitution promotes the preservation of open-space land by authorizing the legislature to tax open-space land devoted to farm or ranch purposes on the basis of its productive capacity. TEX. CONST. art. VIII, § 1–d–1(a) (Vernon Supp. 1993).

*Tarrant Appraisal Dist. v. Moore,* 845 S.W.2d 820, 821 (Tex.1993). Because the purpose of section 1–d–1 is the preservation of open-space land rather than the preservation of the family farm, there is no legitimate basis to discriminate against nonresident aliens, and to do so violates both the state and federal constitutions.

It is the general policy of the law, where rights have been fixed under a constitutional provision, that the legislature is without power to destroy or impair rights. It is also the general rule that the legislature does not have power to enact any law contrary to a provision of the constitution, and if any law, or part thereof, is undertaken to nullify the protection furnished by the constitution, such law, or part thereof, that conflicts with the constitution is void. *City of Fort Worth v. Howerton,* 149 Tex. 614, 619, 236 S.W.2d 615, 618 (1951). The legislature has no power to change the meaning of a constitutional provision or to enact laws that conflict with the constitution. *Jones v. Ross,* 141 Tex. 415, 419, 173 S.W.2d 1022, 1024 (1943). The purpose of section 1–d–1 is to promote open-space land. Section 1–d–1 has a broad scope that is based on the type of use to which the land is devoted and, unlike section 1–d, not on the type of person who uses the land. When the legislature enacted section 23.-56(3), it denied the open-space exemption to one type of landowner who qualified for favorable tax treatment under section 1–d–1. This places the two provisions in conflict with each other. I would hold that 23.56(3) is unconstitutional as applied to GNB.

GNB also contends in its sixth point of error that section 23.56(3) is unconstitutional because it violates GNB's right to equal protection.

The states, in the exercise of their taxing power, are subject to the requirements of the Equal Protection Clause of the Fourteenth Amendment. *See Allied Stores v. Bowers,* 358 U.S. 522, 526, 79 S.Ct. 437, 440, 3 L.Ed.2d 480 (1959). A corporation is a "person" within the meaning of the Fourteenth Amendment. *Metropolitan Life Ins. Co. v. Ward,* 470 U.S. 869, 882 n. 9, 105 S.Ct. 1676, 1684 n. 9, 84 L.Ed.2d 751 (1985). GNB is a corporation that has been denied tax abatements under section 23.56(3).

Whatever the extent of a state's authority to exclude foreign corporations from doing business within its boundaries, that authority does not justify the imposition of more onerous taxes or other burdens on foreign corporations, unless the distinction between foreign and domestic corporations bears a rational relationship to a legitimate state purpose. *Western & S. Life Ins. Co. v. State Bd. of Equalization,* 451 U.S. 648, 667–68, 101 S.Ct. 2070, 2082–83, 68 L.Ed.2d 514 (1981).

In determining whether a challenged classification is rationally related to the achievement of a legitimate state purpose, a court must consider two questions: (1) Does the challenged legislation have a legitimate purpose, and (2) Was it reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose? *See Western & S. Life Ins. Co.,* 451 U.S. at 668, 101 S.Ct. at 2083.

The purpose of section 1–d–1 is to promote open-space land. The legislature has enact-

ed a statutory process to implement section 1–d–1 in sections 23.51–.57 of the tax code. The legislature had a legitimate and permissible purpose in enacting sections 23.51–.57.

But was it reasonable for lawmakers to enact section 23.56(3) and single out corporations owned by nonresident aliens for exclusion? There is a ·point beyond which the state cannot go without violating the Equal Protection Clause. *Allied,* 358 U.S. at 527, 79 S.Ct. at 441. Section 23.56(3) is not rationally related to the promotion of open-space land because it is irrational to exclude a tax abatement to a corporation that is using its land as open spaces simply because it is owned by nonresident aliens. When the purpose is the preservation of open-space land, how can it be permissible under the Equal Protection Clause to allow a domestic corporation to undertake the exact same kind of land use that a corporation owned by nonresident aliens cannot undertake? The foreign corporation and the domestic corporation would equally preserve open space.

Accordingly, I would hold that section 23.-56(3) violates the Equal Protection Clauses of the United States Constitution and the Texas Constitution.

